RICHARD W. COHEN
DAVID C. HARRISON
LOWEY DANNENBERG COHEN & HART, P.C.
One North Broadway
White Plains, New York 10601-2310
Telephone: 914-997-0500

*Counsel for the New York City Pension Funds*

ROBERT C. SCHUBERT S.B.N. 62684
WILLEM F. JONCKHEER S.B.N. 178748
SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP
Three Embarcadero Center, Suite 1650
San Francisco, California 94111
Telephone: 415-788-4220

*Local Counsel for The New York City Pension Funds*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LISA C. BERRY,<br><br>Defendant. | No. C 08-cv-0246-JW<br><br>Hon. James Ware<br><br>**PLAINTIFFS' SUPPLEMENTAL STATUS REPORT SUBMISSION**<br><br>Date: September 8, 2008<br><br>Time: 10:00 a.m. |

In the Joint Status Report, filed on August 29, 2008, the parties referred the Court to Judge Whyte's August 27, 2008 order in the action *SEC v. Berry*, C-07-4431-RMW (N.D. Cal.) granting in part and denying in part defendant Berry's motion to dismiss, and granting the SEC 30 days leave to amend. For the Court's convenience, plaintiffs hereby attach a copy of Judge Whyte's order as Exhibit A. Prior to the filing hereof, counsel for plaintiffs advised counsel for defendant Berry by email of their intention to submit this filing to the Court.

Dated: September 3, 2008

SCHUBERT JONCKHEER KOLBE & KRALOWEC LLP

/s/
ROBERT C. SCHUBERT
WILLEM F. JONCKHEER
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220
Facsimile: (415) 788-0161

*Local Counsel for Plaintiffs*

RICHARD W. COHEN
DAVID C. HARRISON
LOWEY DANNENBERG COHEN & HART, P.C.
One North Broadway
White Plains, New York 10601-2310
Telephone: 914-997-0500

*Counsel for the New York City Pension Funds*

# EXHIBIT A

**E-FILED on       8/27/2008**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>     v.<br><br>LISA C. BERRY,<br><br>            Defendant. | No. C-07-04431 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE<br><br>**[Re Docket Nos. 48; 52]** |

      Defendant Lisa C. Berry ("Berry") moves to dismiss four claims of the first amended complaint filed by the plaintiff, the Securities and Exchange Commission ("SEC"). Berry also moves to strike the SEC's request for disgorgement. The SEC opposes the motions. The court has read the moving and responding papers and considered arguments of counsel. For the reasons set forth below, the court grants in part and denies in part Berry's motion to dismiss and grants her motion to strike. The SEC is given thirty days leave to amend.

## I. PROCEDURAL HISTORY

On May 7, 2008, the court issued its order granting in part and denying in part Berry's motion to dismiss the SEC's complaint and gave the SEC thirty days to amend its complaint. *SEC v. Berry*, 2008 WL 2002537 (N.D. Cal. May 7, 2008). The SEC has since filed its first amended complaint. *See* C-07-04432, Docket No. 47 (N.D. Cal. Jun. 6, 2008) ("FAC"). Berry now moves to dismiss and strike select portions of the first amended complaint, which largely repeats the allegations of the original complaint. The court summarized these allegations in its prior order, *see Berry*, 2008 WL 2002537, *1-*6, and therefore only lays out the background necessary to dispose of the issues raised by these motions.

## II. LIABILITY FOR FALSE STATEMENTS

The SEC's first claim alleges that Berry violated Rule 10b-5 by making untrue statements of fact.[1] The SEC's fourth claim alleges that Berry also violated sections 17(a)(2) and 17(a)(3) of the Securities Act by making the alleged false statements. Berry moves to dismiss, arguing that the SEC fails to adequately allege how Berry participated in making any false statements and that the SEC fails to demonstrate with particularity that some of her statements were false.

### A. The Allegedly False Statements and Berry's Role in Preparing Them

The SEC's first amended complaint alleges that Berry made material misstatements in dozens of public filings. Because each filing may form the basis for the SEC's claim, the court analyzes each statement individually.

#### 1. False Statements in KLA Filings

Berry served as Vice President and General Counsel of KLA-Tencor Corporation from September 1996 until June 1999. FAC ¶ 11. The first statements that the SEC alleges comprise Berry's fraudulent statements are KLA's quarterly reports on Form 10-Q, beginning in 1997. *Id.* ¶ 38. Specifically, the SEC alleges that KLA's 10-Q filings for the first three fiscal quarters of 1997 and 1998 and for the quarter ending on March 31, 1999 were false. *Id.* The filings were false

---

[1] The SEC also alleges that Berry violated Rule 10b-5 by employing schemes and artifices to defraud. The court addresses these allegations in section III, *infra*.

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF     2

because of KLA's "failure to record compensation expenses associated with granting undisclosed in-the-money options," which caused the reports' financial statements to be incorrect. *See id.* Berry "reviewed, discussed and helped finalize each of these false and misleading Forms 10-Q, as General Counsel of KLA." *Id.* ¶ 38; *compare with Berry*, 2008 WL 2002537, *10. The SEC further alleges that:

> Berry was the driving force behind finalizing the preparation of drafts of KLA's annual reports, quarterly reports, registration statements on Forms S-8 and proxy statements filed with the Commission. Berry coordinated edits to such documents which she received from other persons or offered herself, and organized the final drafts of such documents that were filed with the Commission. As KLA's General Counsel, Berry thus controlled the drafts and the final products for each of these filings. She had a significant role and frequently acted as the final decision maker regarding any changes to these drafts. Berry was the person ultimately in charge of ensuring the completion of KLA's SEC filings, including the reporting of securities acquired, disposed of, or beneficially owned by KLA executives.

FAC ¶ 40.

On January 30, 1998, KLA filed a Form S-8 registration statement to permit KLA to sell securities. *Id.* ¶ 39. The Form S-8 "incorporated the false financial statements." *Id.* Berry "reviewed and prepared" the registration statement, and signed it as KLA's general counsel. *Id.* KLA filed another Form S-8 registration statement on August 7, 1998, which again incorporated the company's financial statements. *Id.* Berry reviewed, prepared and signed this registration statement too. *Id.*

On September 28, 1999, KLA filed a proxy statement announcing its annual shareholder meeting. FAC ¶ 20. Among other things, the proxy statement discussed executive compensation. *Id.* In this discussion of executive compensation, the proxy statement "represented that stock options were granted at the market price on the date of the grant." *Id.* Furthermore, it "stated that one of the material terms of certain grants to certain executives was that the exercise price of the options was the fair market value of the company's common stock as of the date of the grant." *Id.*[2]

---

[2] Specifically, the proxy statement provides a table disclosing the option grants to six named executives. *See* KLA Tencor, Inc., Definitive Proxy Statement at 19 (Form 14-A) (Sept. 28, 1998). Four executives – Kenneth Levy, Kenneth L. Schroeder, Robert J. Boehlke, and Gary E. Dickerson – received options. *Id.* A material term of these grants was that the "exercise price of the options is the fair market value of Common Stock as of the date of grant." *Id.*

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF     3

The SEC does not allege that Berry signed the proxy statement, and it appears that she did not. The SEC does allege that Berry "reviewed, discussed, and finalized" the proxy statement. *Id.* ¶ 21.

KLA also filed its Form 10-K annual report on September 28, 1998. FAC ¶ 37; *see* KLA Tencor, Inc., Annual Report (Form 10-K) (Sept. 28, 1998). The SEC alleges that the annual report was false because it overstated KLA's net income for 1998 by 4% because of its failure to properly account for stock option grants. *Id.* ¶ 37. The annual report also incorporated the proxy statement containing the allegedly false statements about the option grants to four executives. *See id.* ¶ 20. Furthermore, the annual report included statements that KLA complied with the accounting rules governing stock option grants. *Id.* ¶¶ 18, 19. Berry "reviewed, discussed, and finalized" this 10-K filing and drafts of the report. *Id.* ¶¶ 21, 37.

KLA filed another Form S-8 registration statement on December 4, 1998. FAC ¶ 39. This statement again incorporated the allegedly false financial statements. *Id.* While Berry "reviewed and prepared" this filing, she did not sign it. *See id.*

On September 28, 1999, KLA again filed its annual report on Form 10-K. FAC ¶ 37. The SEC alleges that the report was false because its overstated KLA's net income by 46% due to the failure to properly account for stock option grants. *Id.* The 10-K also incorporated KLA's not-yet filed proxy statement and stated that the company followed the accounting rules related to stock options. *Id.* ¶¶ 18-20; *accord see* KLA Tencor, Inc., Annual Report at 1 (Form 10-K) (Sept. 28, 1999). According to the SEC, Berry "reviewed, discussed, and finalized" this report, despite having been at Juniper for approximately three months when the document was filed. FAC ¶¶ 11, 20.[3]

The proxy statement discussed above was filed on October 15, 1999. *Id.* ¶ 20. The SEC makes identical allegations about this proxy statement as it did the 1998 proxy. Namely, that the proxy statement "represented that stock options were granted at the market price on the date of the grant," "stated that one of the material terms of certain grants to certain executives was that the exercise price of the options was the fair market value of the company's common stock as of the date

---

[3] In June 1999, Berry left KLA and began as General Counsel for Juniper Networks, Inc. *Id.* ¶ 11. She also became a Vice President and Secretary in July. *Id.* She worked in these roles at Juniper until January 2004. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF                                        4

of the grant,"and that Berry "reviewed, discussed, and finalized" the proxy statement. *Id.* ¶¶ 20, 21, *but see id.* ¶ 11.[4]

### 2.     False Statements in Juniper Filings

Berry became general counsel for Juniper on June 18, 1999. FAC ¶¶ 11, 46. Juniper made its initial public offering six days later. *Id.* ¶ 47. Soon thereafter, the SEC alleges that Berry made her first fraudulent statement at Juniper in its report for the quarter ending on September 30, 1999. FAC ¶ 70; *see* Juniper Networks, Inc., Quarterly Report (Form 10-Q) (Oct. 29, 1999). Specifically, the SEC alleges that this quarterly report (and all of Juniper's quarterly reports through the second quarter of fiscal 2003) "contained materially false and misleading financial statements" because of Juniper's failure to record compensation expenses caused by granting in-the-money options. *Id.* According to the SEC,

> Berry was responsible for, controlled and managed the drafting and preparation of the Forms 10-Q. She made sure all tasks associated with preparing the Forms 10-Q were completed. She reviewed all sections of the Forms 10-Q before they were filed and weighed in where changes needed to be made. Berry also communicated with Juniper's auditors on issues of concern to the auditors. Juniper's CFO relied on Berry to confirm that the Forms 10-Q were prepared properly. Juniper's CFO and SEC Reporting Manager both relied on Berry to identify and correct any inaccuracies in the Forms 10-Q. Berry was the person involved in the 10-Q preparation process who knew Juniper had backdated stock options without recording compensation expenses and that as a result, its financial statements were materially false. Yet Berry did not inform others involved in the Form 10-Q preparation process of this fact.

*Id.*

The SEC next finds fault with Juniper's Form S-8 registration statement filed on March 14, 2000. FAC ¶ 72. The registration statement "incorporated by reference false and misleading periodic reports." *Id.* According to the SEC, Berry prepared and reviewed the statement. *Id.* Additionally, she signed a legal opinion contained in an exhibit to the statement. *Id.* In that opinion,

---

[4] The definitive proxy statement again provides a table disclosing option grants to KLA's executives. *See* KLA Tencor, Inc., Definitive Proxy Statement at 13 (Form 14-A) (Oct. 15, 1999). It again states that a material term of the grant is that "the exercise price of the options is the fair market value of Common Stock as of the date of grant." *Id.* The table reveals two option grants (received by all of the executives), one of which expires on August 31, 2008. *Id.* Because the option grants have a 10-year term, *see id.*, the proxy suggests that one of the grants was made on August 31, 1998. This appears to be the option grant the SEC alleges was backdated in paragraph 28 of its first amended complaint.

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF                                                                5

Berry stated that Juniper authorized the issuance of the shares. *Id.* The SEC does not allege that Berry's exhibit made any statement regarding the company's financials or stock option grant practices. *See id.* The SEC makes identical allegations about five other Form S-8 registration statements filed by Juniper from 2000 to 2002. *Id.*

On March 29, 2000, Juniper filed its annual report for the fiscal year ending December 31, 1999. FAC ¶¶ 48, 67; *see* Juniper Networks, Inc., Annual Report (Form 10-K) (Mar. 29, 2000). The report stated that "Incentive stock options are granted at an exercise price of not less than the fair value per share of the common stock on the date of grant." *Id.* ¶ 48. The report also stated that Juniper followed the applicable accounting rules with respect to stock option grants "[b]ecause the exercise price of the Company's stock options equals the market price of the underlying stock on the date of grant[.]" *Id.* ¶ 49. The annual report also incorporated Juniper's proxy statement by reference, *id.* ¶ 66, which the SEC alleges contained false statements as discussed below. Finally, the SEC alleges that the annual report's audited financial statements were false because of the failure to record the expense of issuing the backdated stock options. *Id.* ¶ 67. The SEC makes a nearly identical allegation regarding Berry's role in preparing Juniper's annual report as it did with respect to Juniper's quarterly reports. *See id.* Furthermore, the SEC repeats these allegations with respect to Juniper's annual reports for the 2000-2002 fiscal years.

The first allegedly fraudulent proxy statement followed on April 13, 2000. FAC ¶ 50. Similar to the KLA proxies, the 2000 Juniper proxy statement contained a discussion of executive compensation. *Id.* It stated that options granted to officers "are granted at fair market value on the date of grant." *Id.* The proxy discloses grants with 10-year terms and expiration dates of February 10, 2008 and October 4, 2009, suggesting grant dates in February and October of 1999. *See* Juniper Networks, Inc., Definitive Proxy Statement at 15 (Form 14-A) (Apr. 13, 2000). The SEC alleges that this statement was false because "Berry routinely backdated grants to a date in the past when Juniper's stock closing price was lower." FAC ¶ 50. According to the SEC, Berry "drafted, edited and signed as Juniper's General Counsel" the proxy statement. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF                     6

1    The SEC also takes issue with Juniper's proxy statement for 2001 and 2003, which contained

2 the same statement that "options are granted at fair market value on the fate of grant." *Id.* The SEC

3 also accuses Berry of making a fraudulent statement in the 2002 proxy statement, which stated that

4 employees at Juniper who received stock options had "a right to purchase stock in the future at a

5 price which is the fair market value on the date of the stock option grant." *Id.* Again, the SEC

6 alleges that these statements are false because of Berry's alleged backdating and that Berry drafted,

7 edited and signed these proxy statements.

8    In addition to these approximately two dozen public filings, the SEC also alleges that Berry

9 made fraudulent statements in a trio of Form 8-K current reports in 2003. FAC ¶ 71. According to

10 the SEC, these current reports contained false financial results because of Juniper's failure to

11 properly account for the expense of granting options. *Id.* Berry decided when Juniper had to file a

12 Form 8-K current report and she determined what each current report had to contain. *Id.*

13   Finally, the SEC alleges that "[w]hen asked in testimony about her role in preparing Juniper's

14 periodic Commission filings and proxy statements, Berry asserted her Fifth Amendment privilege

15 and refused to testify." FAC ¶ 51.

16   **B.    Berry's Participation in Making the Allegedly Fraudulent Statements**

17   To begin with the simplest portion of the analysis, Berry's invocation of the Fifth

18 Amendment to avoid answering questions about her role in preparing Juniper's proxy statements and

19 periodic filings (i.e., its Form 10-Q quarterly reports, Form 10-K annual reports, Form 8-K current

20 reports and Form S-8 registration statements, *see* FAC ¶ 51) requires the court to deny her motion as

21 to those filings. On a motion to dismiss, the court must draw all inferences in favor of the plaintiff.

22 A court may draw an unfavorable inference from a refusal to testify. *See SEC v. Colello*, 139 F.3d

23 674, 677-78 (9th Cir. 1998).[5] In this context therefore, the court must infer that Berry refused to

---

[5] Berry's argument to the contrary, citing the criminal case of *Ohio v. Reiner*, 532 U.S. 17 (2001), that "the mere invocation of the Fifth Amendment is not a fact or evidence supporting an inference that Berry acted wrongfully" is without merit in the civil context. At the hearing on the motion, Berry cited to *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 490 F. Supp. 2d 784, 825-26 (S.D. Tex. 2007). The *Enron* decision held that an invocation of the Fifth Amendment could not be used to circumvent the requirement that a plaintiff plead the allegedly fraudulent statement with particularity. 490 F. Supp. 2d at 825. Here, the SEC has (largely) alleged what

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF                                 7

1 answer questions about her role in preparing those documents because she prepared them. As
2 someone who prepared an allegedly fraudulent statement, Berry can be held primarily liable under
3 section 10(b) and Rule 10b-5. *In re Software Toolworks Inc. Securities Litig.*, 50 F.3d 615, 628-29
4 & n. 3 (9th Cir.1994).

5 The First Amended Complaint lacks any similar allegation regarding Berry's role in
6 preparing KLA's filings.[6] Accordingly, the court must turns to examining whether the First
7 Amended Complaint sufficiently alleges that Berry made the allegedly false statements. As
8 explained in this court's prior ruling, substantial or intricate involvement in preparing a false
9 statement that is later made by another can support a claim for securities fraud. *Berry*, 2007 WL
10 2002537 at *10 (citing *Software Toolworks*, 50 F.3d at 628-29 & n. 3). For example, in *Software*
11 *Toolworks*, the company's auditor helped draft and edit a misleading letter to the SEC and the letter
12 referred the SEC to the auditor if it had any questions, and this level of involvement sufficed. *Id.* at
13 628 n.3.

14 Here, the SEC has alleged that Berry "coordinated edits," offered her own edits, "organized
15 the final drafts," and "acted as the final decision maker" with respect to all of KLA's public filings.
16 While the SEC's allegation seems hard to credit with respect to the two documents filed months after
17 Berry left KLA, the court must nonetheless credit the SEC's good faith allegations that Berry had a

---

statements it contends are false and why. What the SEC has not alleged is Berry's role in making those statements. When asked what her role was, Berry invoked the Fifth Amendment. In this context, it is proper at the pleading stage to infer from Berry's invocation that she made the false statements.

[6] The SEC's opposition is unfortunately ambiguous. The SEC argues "since defendant refused to answer questions regarding her role in preparing singing [sic] *any* of the filings, or *any* of their subparts, the Court should infer that if she did testify, her testimony would support the Commission's allegations." Opp'n at 18 n.6 (emphasis added). However, the SEC's first amended complaint is much more circumspect with respect to its allegations regarding Berry's invocation of the Fifth Amendment. It only alleges that she invoked the privilege "when she was asked questions regarding how stock options at KLA were priced and granted,""when she was asked questions regarding how stock options at Juniper were priced and granted," and"about her role in preparing Juniper's periodic Commission filings and proxy statements." FAC ¶¶ 45, 51, 76.

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF  8

1 substantial role in preparing *all* of KLA's public filings.[7]  Accordingly, the court denies Berry's
2 motion to dismiss based on the SEC's failure to particularly allege Berry's role in making false
3 statements.  However, the SEC may want to insure that it in good faith has facts to support Berry's
4 involvement in documents filed after she left KLA.`

### C.     The Section 14(a) and Rule 14a-9 Claims

The SEC also alleges that Berry aided and abetted KLA and Juniper's violations of section 14(a) of the Exchange Act and rule 14a-9 because she assisted the companies in making false and misleading statements in their proxy materials.  Berry moves to dismiss the claims on the basis that the SEC has not adequately alleged that the proxy statements contain a false statement.  *See Berry*, 2008 WL 2002537 at *11.

The court disagrees in part.  The proxy statements all contain statements that a material term of various executives' stock option grants was that the grant was made at fair market value.  For example, the October 1999 KLA proxy statement represents that the August 31, 1998 grant to various executives was made at fair market value.  The SEC specifically alleges that this grant was backdated to August 31, 1998 from various times in October.  FAC ¶ 28.  In other words, the SEC identified the portion of the 1999 KLA proxy statement stating that executives received grants at fair market value and alleged that this statement was false because one of the grants was not made at fair market value.

For another example, the SEC alleges that Juniper's stock option grant dated October 4, 1999 was backdated and that the grant was not made until November 5, 1999.  FAC ¶ 61.  Juniper's 2000 proxy statement however states that a material term of the grants dated October 4, 1999 to five executives was that they were granted at fair market value.  *See* Juniper Networks, Inc., Definitive Proxy Statement at 15 (Form 14-A) (Apr. 13, 2000).  Again, the SEC has identified a statement in the proxy filing that it claims is false and why the statement is false.  The SEC again lays out similar

---

[7] Berry argues that she had no role in preparing the financial statements, which are the only "fraudulent statements" alleged with respect to the quarterly reports and registration statements. At this stage of the proceedings, the court cannot weigh credibility and must accept the SEC's allegation of her involvement. This issue might, however, be appropriately resolved at summary judgment, if the SEC has no evidence on which to base its allegations.

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF                                                                                9

allegations regarding Juniper's 2001 proxy statement. *Compare* FAC ¶ 63 (alleging the Dec. 21, 2000 grant was backdated) *with* Juniper Networks, Inc., Definitive Proxy Statement at 15 (Form 14-A) (Mar. 28, 2001).

Berry appears correct, however, that the remainder of the SEC's allegations remain vague. According to the SEC, KLA and Juniper "routinely" backdated options grants. Further, it argued at the hearing that other alleged backdated grants to executives are specifically tied to actions by Berry but admitted that the complaint could be more clearly organized to tie specific backdated options for which Berry was responsible to the various allegedly false proxies. The SEC offered to amend to clearly show the nexus between Berry's acts and the falsity of the financial statements in the proxies. The court accepts that offer and requires that the SEC specifically set forth such facts.

**D. The Alleged Falsity of the Registration Statements and Juniper Proxies**

Berry also moves to dismiss the fourth claim with respect to certain registration statements filed by KLA and Juniper and the Juniper proxy statements. As discussed above, the SEC has failed to allege how the 2002 and 2003 Juniper proxy statements are false; the court therefore grants Berry's motion as to those filings.

With respect to KLA's January and August 1998 registration statements, Berry notes that the filings incorporate KLA's 10-K from fiscal 1997 and that the January Form S-8 includes 1998's first quarterly report and that the August Form S-8 includes all three of 1998's quarterly reports. However, Berry points out that the earliest backdating at KLA alleged by the SEC was purportedly done on August 28, 1998. Therefore, Berry argues, the incorporated financial statements cannot be false because the SEC has not alleged any backdating that could affect those financial statements.

The most relevant allegations made by the SEC are the introductory statements that Berry "on repeated occasions" backdated stock options beginning in 1997 through 1999. FAC ¶ 3. The first amended complaint also alleges that in February 2007, KLA announced that it was restating its financial results, though the complaint does not state what years KLA restated. *Compare* FAC ¶ 43 *with* FAC ¶ 74 (alleging the years and amounts of Juniper's earnings restatements). The court previously took judicial notice of KLA's annual report to document the existence of restatements

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF          10

because of the SEC's failure to allege them, *see Berry*, 2008 WL 2002537 at *1 & n.1, and doing so again here, notes that KLA stated that it had to restate its financial results due to option grants dating back to July 1, 1997. KLA-Tencor, Inc., Annual Report at ii-iii (Form 10-K) (Jan. 26, 2007). The court therefore declines to grant Berry's motion to dismiss based on the SEC's failure to make an explicit allegation that KLA's financial statements in the incorporated financial statements contained allegedly false statements. Although it appears that backdating did go back to July 1, 1997, the SEC should allege facts tying specific acts of backdating to the need to restate the financials.

With respect to the Juniper registration statements, the SEC has alleged that the incorporated financial statements contained false statements, and therefore alleged how the registration statements are false. The court therefore denies Berry's motion to dismiss with respect to these filings.

### III. PRIMARY LIABILITY FOR THE BACKDATING "SCHEME"

Berry next moves to dismiss the SEC's first claim for securities fraud to the extent it is founded on Berry's participation in a deceptive scheme.

The SEC first opposes the motion by arguing that Berry's motion is an improper motion for reconsideration. The argument is inapposite because Berry's first motion to dismiss argued that she did not make any misrepresentations; it did not address 10b-5's other proscribed conduct. *See Berry*, 2008 WL 2002537 at *11 ("Berry fails to differentiate between these different bases for imposing liability under Rule 10b-5 when she argues that she did not make any false statements."). The court raised the issue in its prior order because the SEC had broadly alleged that Berry violated each prong of Rule 10b-5 (and still does), while Berry's prior motion to dismiss focused only the allegations that Berry made false statements. In raising the issue of the varied bases for the SEC's claim, the court wrote:

> As alleged, Ms. Berry falsified stock option grants at both KLA and Juniper to avoid properly accounting for compensation charges. The overall scheme was deceptive, and Ms. Berry's alleged contribution was fraudulent. Accordingly, the SEC's first claim for securities fraud does adequately allege a "scheme" theory of liability.

*Id.* The court's language suggests that it found that the SEC had adequately alleged a claim against Berry under Rule 10b-5(a) or (c). The court did not intend to make such a finding, but instead

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF     11

merely meant to emphasize that Berry's motion failed to address the full scope of the SEC's securities fraud allegations. Thus, Berry's current motion is timely.

Resting on its procedural argument, the SEC fails to engage Berry's argument that the SEC has failed to allege any conduct other than misrepresentations, failed to allege the "scheme" with particularity, and failed to plead that the allegedly deceptive conduct bore any relationship to the sale of a security. Accordingly, the court grants Berry's motion to dismiss the SEC's first claim to the extent it is not based on misrepresentations pursuant to Rule 10b-5(b). Such dismissal is clearly without prejudice to the SEC based on the reasonable misunderstanding arising from the court's prior order.

## IV. THE SUFFICIENCY OF THE EQUITABLE TOLLING ALLEGATIONS

This court previously held that the SEC's request for civil penalties was barred by the applicable statute of repose, absent a basis for applying equitable tolling based on Berry's fraudulent concealment of her conduct. *Berry*, 2008 WL 2002537 at *7. The court granted the SEC leave to amend and instructed that the SEC must "demonstrate that (1) Berry's conduct resulted in concealment of the operative facts; (2) the SEC failed to discover the operative facts within the limitations period; and (3) the SEC acted with due diligence before it discovered Berry's alleged backdating." *Id.* at *7-*8 (citing *FEC v. Williams*, 104 F.3d 237, 241 (9th Cir.1996)).

Berry argues that the SEC failed to comply with the court's instructions. First, Berry argues that the SEC has not alleged how her conduct concealed the operative facts. Berry is correct that mere allegations of fraud are not enough to plead fraudulent concealment, precisely because such allegations do not demonstrate that the defendant *actively* concealed her fraud through some "trick" or "contrivance" or conduct "designed to mask" the fraud. *SEC v. Jones*, 476 F. Supp. 2d 374, 382 (S.D.N.Y. 2007) (citing and explaining cases). However, the SEC has alleged more than a conclusory statement of fraud. With respect to Berry's conduct at Juniper, the SEC alleges that she fabricated meeting minutes to create the appearance that stock options were granted on a particular date. FAC ¶¶ 54-55. Drawing all inferences in the SEC's favor at this stage, this allegation suffices to establish conduct that "resulted in concealment of the operative facts." *Accord Jones*, 476 F.

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF                                                           12

Supp. 2d at 382. With respect to KLA, the conduct alleged by the SEC was less clandestine. The complaint alleges that Berry oversaw the option granting process, that she directed the human resources and stock administration departments to prepare grant approval paperwork, that those departments issued the backdated grants and that Berry left detailed instructions to KLA employees regarding how to backdate stock option grants when she left for Juniper. *See* FAC ¶¶ 24-26, 34. While these allegations suggest that Berry's conduct was well-known within KLA, drawing all inferences in favor of the SEC, the false dates entered into KLA's records could constitute conduct ordered by Berry to conceal the backdating from outside parties like the SEC.[8]

Berry also argues that the SEC has failed to adequately allege its own diligence in pursuing its investigation. To be sure, the SEC's complaint alleges very little about its own activities. It suggests that the SEC did not begin investigating KLA until after KLA's board of directors announced it would be conducting an investigation in May 2006. FAC ¶ 45. With respect to Juniper, the SEC does not allege when it began its investigation, but Juniper announced that it was investigating its option grant practices in May 2006 and "the Commission diligently pursued its own investigation after learning that Juniper's prior representations in its public filings might not be accurate[.]" *Id.* ¶ 76.

Nevertheless, the court cannot agree with Berry at this stage that the SEC has failed to plead its own diligence. The SEC generally alleges this "diligence" at the beginning of paragraph 76. While the fraud aspects of an equitable tolling allegation must be pleaded with particularity, *Rambus, Inc. v. Samsung Electronics Co., Ltd.*, 2007 WL 39374, *6 (N.D. Cal. Jan. 4, 2007), Berry does not offer a compelling argument for why a heightened pleading standard should be applied to the SEC's allegation of its own diligence. Accordingly, Rules 8 and 11 govern, and the SEC's

---

[8] Berry argues at length that her conduct was notorious within both KLA and Juniper. Perhaps this was the case, but for the purpose of establishing equitable tolling, it seems unreasonable to suggest that because the true facts were known to some, others cannot claim that the true facts were concealed from them. Here, the SEC has adequately alleged facts from which one could reasonably infer that Berry's conduct concealed the true status of KLA and Juniper's option grants from the SEC.

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION TO STRIKE
C-07-04431 RMW
TSF 13

1  general pleading of diligence suffices at this stage.  Accordingly, the court can reasonably infer the
2  SEC's "diligence" from the complaint.
3      Furthermore, the court cannot draw the inference that doomed the Federal Election
4  Commission in *FEC v. Williams*, where there was "no allegation that the 22 contributions by
5  Williams' employees and friends were not listed in the campaign reports, or otherwise contained
6  false information."  104 F.3d at 241.  Because the FEC had not been misled (it simply failed to duly
7  exercise its investigative powers), the Ninth Circuit held that it could not invoke equitable tolling to
8  postpone the statute of limitations.  *Id.*  While Berry emphasizes the SEC's broad investigatory
9  powers, she overlooks that the papers being filed with the SEC were allegedly false and did not
10 reveal the alleged illegal conduct on their face, as they did in *WIlliams*.

**V.  DISGORGEMENT**

12 Finally, Berry moves to strike the SEC's prayer for disgorgement, arguing that the SEC failed
13 to amend its complaint to allege a basis for disgorgement.  The SEC responds by noting that the
14 court's prior order said nothing about disgorgement and noted that "the motion is otherwise denied."
15 *Berry*, 2008 WL 2002537 at *13.  The SEC is correct that the court's prior order did not specifically
16 require the SEC to further allege the basis for its request for disgorgement, and hence the court
17 cannot grant Berry's motion to strike with prejudice.
18 On the other hand, the SEC's allegations in support of a request for disgorgement were
19 lacking before, *see id.* at *6, and remain insufficient.  As alleged by the SEC, Berry received
20 backdated stock options at both KLA and Juniper.  FAC ¶¶ 77-78.  The SEC then alleges that Berry
21 exercised "certain" stock options.  *Id.* ¶ 79.  It also alleges that Berry sold shares "she received based
22 on her exercise of stock options."  *Id.*  The gaps in the SEC's allegations speak volumes, and require
23 minimal, but meaningful, additional specificity.  Did Berry ever exercise any *backdated* stock
24 options?  Does Berry still possess any *backdated* stock options that she may one day exercise, or
25 have all of her options been cancelled or repriced?
26 The SEC argues that "a defendant's receipt of backdated, in-the-money options has value at
27 the time of her receipt."  This is true, and the court agrees that unexercised options can be quite
28

ORDER GRANTING IN PART AND DENYING IN PART BERRY'S MOTION TO DISMISS AND GRANTING BERRY'S MOTION
TO STRIKE
C-07-04431 RMW
TSF                                                          14

valuable. But if the defendant never exercised any such options and no longer possesses them, the defendant has not been unjustly enriched and there is nothing for her to disgorge. Accordingly, the court grants Berry's motion to strike the prayer for disgorgement without prejudice.

## VI. ORDER

For the foregoing reasons, the court grants in part and denies in part Berry's motion to dismiss and grants her motion to strike.

1. The court grants the motion to dismiss the first, fourth and tenth claims with respect to the proxy materials for KLA in 1998 and for Juniper in 2002 or 2003 without prejudice.
2. The court grants Berry's motion to dismiss the SEC's first and fourth claims to the extent they are based on "artifice" or "scheme" allegations (as opposed to misrepresentations) without prejudice.
3. The court grants the motion to strike the prayer for disgorgement without prejudice.
4. The court denies the motion in all other respects.

The SEC is given 30 days leave to amend one last time.

DATED:     8/27/2008

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for plaintiff, the SEC:**

Judith L. Anderson    andersonju@sec.gov
Marc J. Fagel      fagelm@sec.gov
Mark Philip Fickes     fickesm@sec.gov
Susan F. LaMarca     lamarcas@sec.gov
Jeremy Emerson Pendrey   pendreyj@sec.gov
Elena Ro        roe@sec.gov

**Counsel for defendant, Lisa C. Berry:**

Lucy Edmond Buford    lbuford@orrick.com
Melinda Haag      mhaag@orrick.com
James Neil Kramer     jkramer@orrick.com
Randall Scott Luskey    rluskey@orrick.com
James A. Meyers     jmeyers@orrick.com
Mozhgan Saniefar     msaniefar@orrick.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**  8/27/2008       TSF
               **Chambers of Judge Whyte**