MELINDA HAAG (SBN 132612)
Email: mhaag@orrick.com
JAMES A. MEYERS (*ADMITTED PRO HAC VICE*)
Email: jmeyers@orrick.com
JAMES N. KRAMER (SBN 154709)
Email: jkramer@orrick.com
NANCY E. HARRIS (SBN 197042)
Email: nharris@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:    (415) 773-5700
Facsimile:    (415) 773-5759

Attorneys for Defendant
Lisa C. Berry

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THE NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, THE TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK, THE NEW YORK CITY FIRE DEPARTMENT PENSION FUND, THE NEW YORK CITY POLICE PENSION FUND, THE NEW YORK CITY POLICE SUPERIOR OFFICERS' VARIABLE SUPPLEMENTS FUND, THE NEW YORK CITY POLICY OFFICERS' VARIABLE SUPPLEMENTS FUND, THE NEW YORK CITY FIRE OFFICERS' VARIABLE SUPPLEMENTS FUND, AND THE NEW YORK CITY TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK VARIABLE ANNUITY PROGRAM, <br><br> Plaintiffs, <br><br> v. <br><br> LISA C. BERRY, <br><br> Defendant. | Case No.  C 08 0246 JW <br><br> **LISA C. BERRY'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:          January 12, 2009 <br> Time:          9:00 a.m. <br> Courtroom:  8 <br> Before:       Hon. James Ware |

1

**TABLE OF CONTENTS**

2

Page

3    I.    INTRODUCTION ................................................................................................ 2

4    II.    PROCEDURAL BACKGROUND ....................................................................... 3

     A.    Juniper Audit Committee Investigation ................................................. 3

5    B.    Plaintiffs' Complaint Against Juniper and Other Individual Defendants .............. 3

6    C.    SEC Actions Against Juniper and Ms. Berry ......................................... 5

7    III.    LEGAL STANDARDS ....................................................................................... 6

     A.    The Heightened Pleading Standards Applicable to a Securities Class Action ....... 6

8    IV.    ARGUMENT ...................................................................................................... 9

9    A.    The Majority of Plaintiffs' Claims Against Ms. Berry are Time-Barred ............... 9

10   B.    Plaintiffs Do Not Adequately Plead Ms. Berry's Primary Liability For Any Alleged False Statement Or Omission ................................................ 10

11         1.    Plaintiffs Have Failed To Allege That Ms. Berry Substantially Participated In The Preparation Of Any Alleged Misstatement ............... 11

12         2.    Plaintiffs Have Failed To Allege The Falsity Of Any Public Filing That They Claim Ms. Berry "Signed" ........................................ 13

13         a.    The Juniper proxy statement notices ............................. 14

14         b.    2003 Note Registration Statement ................................ 14

15   C.    Plaintiffs Fail To Adequately Plead "Scheme Liability" ....................... 15

16         1.    Scheme Liability Is Narrowly Construed Under Stoneridge ................... 15

           2.    Plaintiffs Have Failed To Plead A Viable Scheme Liability Claim .......... 17

17         a.    Plaintiffs do no more than allege that Ms. Berry aided and abetted the making of false statements by others ........................ 17

18

19         b.    Plaintiffs do not allege reliance upon any deceptive acts and not satisfy the "in connection with" requirement ........................ 19

20   D.    Plaintiffs Fail To Allege Facts Giving Rise To A Strong Inference Of Scienter ........................................................................................... 19

21   E.    Plaintiffs Fail To State a Claim For Control Person Liability Under Section 20(A) ................................................................................... 24

22   V.    CONCLUSION ................................................................................................ 25

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Burnett v. Rowzee,*
2008 WL 638503 (C.D. Cal. Feb. 11, 2008).................................................................. 17, 19

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994) ........................................................................................................ 17

*Dura Pharms., Inc. Sec. Litig.,*
548 F. Supp. 2d 1126 (S.D. Cal. 2008) ........................................................................ 17

*Dura Pharms., Inc. v. Broudo,*
544 U.S. 336 (2005) ........................................................................................................ 7

*Gompper v. VISX, Inc.,*
298 F.3d 893 (9th Cir. 2002)................................................................. 7, 8, 19, 20

*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000)........................................................................ 11, 25

*In re Apple Computer Inc., Deriv. Litig.,*
2007 WL 4170566 (N.D. Cal. Nov. 19, 2007)........................................................ 18

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,*
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ............................................................... 23

*In re Atmel Corp. Deriv. Litig.,*
2008 WL 2561957 (N.D. Cal. June 25, 2008) ................................................ 17

*In re Connectics Corp. Sec. Litig.,*
542 F. Supp. 2d 996 (N.D. Cal. 2008) ............................................................. 8, 21

*In re Daou Systems, Inc. Sec. Litig.,*
411 F.3d 1006 (9th Cir. 2005)........................................................................ 6

*In re Ditech Networks, Inc. Deriv. Litig.,*
2007 WL 2070300 (N.D. Cal. July 16, 2007)...................................................... 18

*In re DVI, Inc. Sec. Litig.,*
249 F.R.D. 196 (E.D. Pa. 2008)...................................................................... 16

*In re Dynegy Sec. Litig.,*
339 F. Supp. 2d 804 (S.D. Tex. 2004) ............................................................ 17

*In re Enron Corp. Sec., Deriv. & ERISA Litig.,*
490 F. Supp. 2d 784 (S.D. Tex. 2007) ............................................................ 9, 13

*In re ESS Tech., Inc. Sec. Litig.,*
2004 WL 3030058 (N.D. Cal. Dec. 1, 2004) ................................................. 11

*In re Exxon Mobil Corp Sec. Litig.,*
387 F. Supp. 2d 407 (D.N.J. 2005) .................................................................. 9

*In re GlenFed, Inc. Sec. Litig.,*
42 F.3d 1541 (9th Cir. 1994)........................................................................ 13

*In re Juniper Networks Sec. Litig.,*
542 F. Supp. 2d 1037 (N.D. Cal. 2008) ................................................... 4, 5, 9, 24

**TABLE OF AUTHORITIES (con't)**

Page(s)

*In re Netopia, Inc., Sec. Litig.*,
  2005 WL 3445631 (N.D. Cal. Dec. 15, 005) .......................................................... 7

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 472 (S.D.N.Y. 2005) .................................................................. 18

*In re Royal Dutch/Shell Transport Sec. Litig.*,
  2006 WL 2355402 (D.N.J. Aug. 14, 2006) ........................................................... 18

*In re Seracare Life Sciences, Inc. Sec. Litig.*,
  2007 WL 935583 (S.D. Cal. Mar. 19, 2007) ..................................................... 12, 14

*In re Silicon Graphics Inc Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ....................................................... 7, 8, 20, 23

*In re Silicon Graphics, Inc. Sec. Litig.*
  970 F. Supp. 746 (N.D. Cal. 1997) ..................................................................... 21

*In re Stac Electronics Sec. Litig.*,
  89 F.3d. 1399 (9th Cir. 1996) ............................................................................. 9

*In re Syntex Corp. Sec. Litig.*,
  855 F. Supp. 1086 (N.D. Cal. 1994);
  *aff'd*, 95 F.3d 922 (9th Cir. 1996) ..................................................................... 10

*In re Tibco Software, Inc.*,
  2006 WL 1469654 (N.D. Cal. May 25, 2006) ..................................................... 12

*In re Vantive Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ........................................................................... 22

*In re Verifone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993) ................................................................................. 8

*In re Zoran Corp. Deriv. Litig.*,
  511 F. Supp. 2d 986 (N.D. Cal. 2007) ........................................................... 21, 24

*Katz v. Image Innovations Holdings, Inc.*,
  542 F. Supp. 2d 269 (S.D.N.Y. 2008) ................................................................. 16

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gibertson*,
  501 U.S. 350 (1991) ............................................................................................. 9

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ........................................................................... 24

*McCasland v. FormFactor Inc.*,
  2008 WL 2951275 (N.D. Cal. July 25, 2008) ....................................................... 7

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ........................................................................... 13, 20

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ............................................................................ 11, 15

*Ohio v. Reiner*,
  532 U.S. 17 (2001) ............................................................................................... 9

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ............................................................................. 16

# TABLE OF AUTHORITIES (con't)

Page(s)

*Regents of the Univ. of Cal. v. Credit Suisse First Boston*,
  482 F.3d 372 (5th Cir. 2007)..................................................................... 18

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ....................................................................... 6

*SEC v. Berry*,
  2008 WL 2002537 (N.D. Cal. May 7, 2008) ................................... 5, 8, 20

*SEC v. Berry*,
  2008 WL 4065865 (N.D. Cal. Aug. 27, 2008)................................ 6, 8, 14

*SEC v. ICN Pharmaceuticals, Inc.*,
  84 F. Supp. 2d 1097 (C.D. Cal. 2000) .......................................................... 8

*SEC v. Parnes*,
  2001 WL 1658275 (S.D.N.Y. Dec. 26, 2001) .......................................... 8

*SEC v. Todd*,
  2007 WL 1574756 (S.D. Cal. May 30, 2007)........................................ 12

*SEC v. Zandford*,
  535 U.S. 813 (2002)...................................................................................... 19

*Shurkin v. Golden State Vintners Inc.*,
  471 F. Supp. 2d 998 (N.D. Cal. 2006) ...................................................... 7

*Siemers v. Wells Fargo & Co.*,
  2007 WL 760750  (N.D. Cal. Mar. 9, 2007)...................................... 12, 13

*South Ferry LP, No. 2 v. Killinger*,
  2008 WL 4138237 (9th Cir. Sept. 9, 2008) .................................... 20, 23

*Steed v. Warrior Capital, LLC*,
  2007 WL 1110757 (W.D. Okla. Apr. 11, 2007) ...................................... 17

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
  128 S. Ct. 761 (2008)........................................................... 15, 16, 19

*TCS Capital Management, LLC v. Apaz Partners, L.P.*,
  2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) .......................................... 18

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007)........................................................................ 9, 20

*Weiss v. Amkor Tech., Inc.*,
  527 F. Supp. 2d 938 (D. Ariz. 2007)...................................................... 22, 24

*Wenger v. Lumisys*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) .......................................................... 13

## STATUTES

15 U.S.C. § 78u-4(b)(1) ............................................................................... 20

15 U.S.C. 78u-4(b)(2) ..................................................................................... 7

28 U.S.C. § 1658(b) .................................................................................... 4, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 12, 2009 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James Ware, United States District Court, 280 S. First Street, San Jose, CA 95113, Lisa C. Berry will move the court for an order dismissing Plaintiffs' Class Action Complaint pursuant to the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), and Federal Rules of Civil Procedure 9(b) and 12(b)(6). This motion is based on the Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the [Proposed] Order; all pleadings on file in this action, oral argument of counsel, and any other matter that may be submitted at the hearing.

**STATEMENT OF ISSUES**

1.      Are Plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") arising from statements made prior to January 14, 2003 time-barred by the relevant statute of repose?

2.      Have Plaintiffs alleged specific, particularized facts that Ms. Berry had substantial or intricate involvement in preparing false statements made by others sufficient to state a claim for primary liability under Section 10(b) of the Exchange Act?

3.      Have Plaintiffs pled specific, particularized facts that Ms. Berry engaged in inherently deceptive conduct relied upon by Plaintiffs in connection with the purchase or sale of securities sufficient to plead a primary violation under a "scheme liability" theory pursuant to Rules 10b-5(a) and (c) under the Exchange Act?

4.      Have Plaintiffs alleged specific, particularized facts sufficient to give rise to a strong inference that Ms. Berry acted with scienter?

5.      Have Plaintiffs stated a claim for control person liability under Section 20(a) of the Exchange Act?

///

///

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION**

3       Lisa C. Berry served as General Counsel of Juniper Networks, Inc. ("Juniper") from June

4   1999 through the end of 2003.  This action arises from an investigation of historical stock option

5   granting practices at Juniper and the subsequent restatement of Juniper's financial statements.

6   Plaintiffs first asserted claims against Juniper, ten current and former officers and directors and

7   Juniper's auditor Ernst & Young in two class actions filed in July and August of 2006,

8   respectively.  These actions were joined in a consolidated complaint and subsequent amended

9   consolidated complaint (the "Consolidated Complaint") in early 2007.  Neither the original nor the

10   amended consolidated complaint named Ms. Berry as a defendant.  Instead, Plaintiffs filed this

11   separate Complaint against Ms. Berry (the "Complaint," or "Berry Action") more than eighteen

12   months after the first Juniper class actions were filed.

13       The Complaint filed against Ms. Berry borrows heavily from Juniper's public statements

14   and from an enforcement action filed by the Securities and Exchange Commission ("SEC") against

15   Ms. Berry.  The remainder of the Complaint is limited to unsupported conjecture regarding

16   Juniper's historical stock option practices.  Such bare allegations cannot withstand scrutiny under

17   the heightened pleadings standards imposed upon civil plaintiffs by the Reform Act.  The

18   Complaint should be dismissed for the following reasons:  (1) The majority of Plaintiffs' claims

19   against Ms. Berry are statutorily barred by the passage of time; (2) Plaintiffs assert no facts (as

20   opposed to bare conclusions) that establish that Ms. Berry made any representation upon which a

21   Section 10(b) claim may be based; (3) Plaintiffs are factually deficient in, and legally precluded

22   from, their claim that Ms. Berry engaged in a scheme to manipulate Juniper's financial results; and

23   (4) the Complaint does not allege facts giving rise to the requisite strong inference that Ms. Berry

24   acted with scienter.

25       As they did in connection with the consolidation motion, Plaintiffs presumably will

26   contend that the Court may rely solely on the fact that Judge Whyte has, albeit with some

27   reluctance, allowed the SEC to proceed with its enforcement action against Ms. Berry as grounds

28   to sustain the claims in this action.  Such reliance would be misplaced.  The Reform Act imposes a

1 significantly higher pleading burden upon private plaintiffs than upon the governmental

2 enforcement agencies.  Plaintiffs must do more than ride the coattails of the SEC; they must allege

3 particularized facts that establish grounds for primary liability claims against Ms. Berry.  They

4 have not done so here.

5 **II.     PROCEDURAL BACKGROUND**

6       **A.     Juniper Audit Committee Investigation**

7       On May 16, 2006, the Center for Financial Research and Analysis ("CFRA") released a

8 study identifying Juniper as one of 17 companies with "the highest risk of having backdated

9 options."  ¶ 184.[1]  Within days, Juniper issued a press release announcing that the Company had

10 received a request for information from the U.S. Attorney for the Eastern District of New York

11 ("the USAO") and that it intended to cooperate fully with all matters concerning the request.  *Id.*

12 The Company further announced that its Audit Committee, assisted by independent outside

13 counsel, was conducting a review of the Company's historical stock option granting practices.  *Id.*

14       On December 20, 2006 Juniper announced that the Audit Committee had concluded its

15 seven-month investigation.  ¶ 202.  Among the Committee's findings, as summarized in the

16 Company's 2006 10-K, were that (1) "[t]here were numerous instances in which grant dates were

17 chosen with the benefit of hindsight as to the price of [Juniper's] stock, so as to give favorable

18 exercise prices"; (2) "the Audit Committee identified serious concerns regarding the actions of

19 former management in connection with the stock option granting process"; and (3) "[f]ormal

20 documentation of stock option grants often lagged the referenced grant date."  RJN, Ex. K at 32;

21 *see also* ¶ 208.  As a result of the Audit Committee's review, the Company restated its prior

22 financial results for fiscal years 2002 through 2005 and the first quarter of 2006.  *Id.*

23       **B.     Plaintiffs' Complaint Against Juniper and Other Individual Defendants**

24       Among the allegations set forth in the Consolidated Complaint are claims under Section

25 10(b) of the Exchange Act and Rule 10b-5 against the Company and Juniper's former Chief

26 Executive Office (Scott Kriens), former Chief Financial Officer (Marcel Gani), and Chief

27

28       [1] Paragraph references herein refer to the Complaint, unless otherwise indicated.

1  Technology Officer (Pradeep Sindhu) (collectively, with the other individual defendants, "Juniper

2  Defendants").[2]  Specifically, Plaintiffs alleged that Mr. Kriens, Mr. Gani and Mr. Sindhu

3  knowingly or recklessly "misrepresented and concealed the backdated nature" of Juniper's option

4  grants and intentionally accounted for those grants incorrectly, so that they could fraudulently

5  inflate Juniper's financial results.  Consolidated Complaint, ¶¶ 10-11.  Plaintiffs also assert claims

6  for control person liability under Section 20(a) against the ten individual defendants.

7       On June 7, 2007, the Juniper Defendants filed a motion to dismiss all of Plaintiffs' claims,

8  including the Section 10(b) claims on the grounds that Plaintiffs had failed to adequately plead

9  scienter and loss causation and, in the alternative, that Plaintiffs' claims based on statements made

10  prior to July 14, 2001 are barred by the statute of limitations set forth at 28 U.S.C. § 1658(b).  *See*

11  Defendants' Motion to Dismiss Consolidated Class Action Complaint, *In re Juniper Networks Sec.*

12  *Litig.*, Case No. C06-04327-JW (N.D. Cal. June 7, 2007), Docket No. 84.

13       In its March 31, 2008 Order, the Court granted in part and denied in part the Juniper

14  Defendants' Motion to Dismiss, holding that Plaintiffs' Section 10(b) claims are time barred to the

15  extent they are based on statements made prior to July 14, 2001, but that Plaintiffs adequately pled

16  the scienter and loss causation elements of those claims.[3]  *See In re Juniper Networks Sec. Litig.*,

17  542 F. Supp. 2d 1037, 1051 (N.D. Cal. 2008).

18       Although "allegations that Defendants held high executive offices, without more, are not

19  enough to support a strong inference of scienter," the Court held, it could infer scienter from

20  Plaintiffs' allegations that Mr. Kriens and Mr. Gani had signed certifications pursuant to Sarbanes-

21  Oxley ("SOX") for Juniper's Forms 10-K and 10-Q and that, by doing so, they had placed

---

22  [2] The Consolidated Complaint also asserts claims under Sections 11 and 15 of the
   Securities Act against Juniper and the individual defendants, alleging misrepresentations in the
23  registration statement filed in connection with Juniper's acquisition of Netscreen Technologies,
   Inc. in 2004 and against Juniper and certain of the individual defendants for alleged
24  misrepresentations in the November 2003 registration statement filed in connection with Juniper's
   offering of Zero Coupon Convertible Senior Notes.
25

26  [3] The Court found that Plaintiffs did not adequately plead scienter as to Mr. Sindhu and
   granted the Juniper Defendants' motion to dismiss him from the Section 10(b) claims.  *In re*
27  *Juniper*, 542 F. Supp. 2d at 1048.  The Court further denied the Juniper Defendants' motion to
   dismiss Plaintiffs' claims under Sections 11 and 15 of the Securities Act and Section 20 of the
28  Exchange Act.  *Id.* at 1054.

1   themselves in a position of oversight over Juniper's stock option grant practices, and that after the

2   stock options investigation had commenced, Mr. Kriens had acknowledged that there were

3   material weaknesses in Juniper's "option granting processes, controls and oversight" during

4   periods covered by the SOX certifications.  *In re Juniper,* 542 F. Supp. 2d at 1047.  The Court also

5   noted that the size of the grants of purportedly backdated options Kriens and Gani had received

6   "supports an inference that they had knowledge of and participated in the backdating of the options

7   because they had a significant financial interest in doing so."  *Id.* at 1047-1048.

8            **C.      SEC Actions Against Juniper and Ms. Berry**

9            On August 28, 2007, the SEC filed separate enforcement actions against Juniper and Ms.

10  Berry, asserting claims based on alleged violations of the anti-fraud and other provisions of the

11  Exchange and Securities Acts.[4]  Without admitting or denying the charges, Juniper consented to a

12  permanent injunction, settling the action against it.  ¶ 220.  On November 19, 2007, Ms. Berry

13  filed a motion to dismiss all claims on the grounds that the SEC had not pled with sufficient

14  particularity that Ms. Berry made an actionable material misstatement or omission or that she acted

15  with scienter.  Defendant Lisa C. Berry's Motion to Dismiss the Complaint, *SEC v. Lisa C. Berry,*

16  Case No. C 04-4431 (N.D. Cal. Nov. 19, 2007), Docket No. 14.

17           In a May 7, 2008 Order, Judge Whyte granted Ms. Berry's motion as to all material

18  misstatements she allegedly made at Juniper.  *SEC v. Berry*, 2008 WL 2002537, at *11 (N.D. Cal.

19  May 7, 2008).  The Court observed that the SEC had "found Ms. Berry's signature on a limited

20  number of documents."  *Id.* at *16.  As for the statements that she did not make or sign, the Court

21  found that the SEC's allegations fell "far short" of what is required to allege that Ms. Berry

22  substantially participated or was intricately involved in their preparation.  *Id.* at *15.  The Court

23  concluded, however, that the SEC may allege scienter generally and had therefore sufficiently pled

24  this element of its claims.  In its Order the Court contrasted the pleading burdens of SEC

25  enforcement actions with those of private lawsuits, noting that "in *private* actions for securities

26  fraud, the plaintiff must allege with particularity and create a strong inference that the defendant

27  ────────────────
          [4] The original Complaint filed against Ms. Berry is the one relied upon by Plaintiffs here.
28  Complaint, *SEC v. Lisa C. Berry*, Case No. C 04-4431 (N.D. Cal. Aug. 27, 2008), Docket No. 1.

                                                              - 5 -
                                                                           MOTION TO DISMISS CAC
                                                                           CASE NO. 08- 0246 JW

1  acted with that intent." *Id.* at 12 (emphasis in Order).

2      The SEC filed a First Amended Complaint and on June 20, 2008 Ms. Berry filed a motion

3  to dismiss, arguing, among other things, that the SEC had not adequately alleged that Ms. Berry

4  made any material misstatements. Lisa C. Berry's Motion to Dismiss First Amended Complaint,

5  *SEC v. Lisa C. Berry*, Case No. C 04-4431 (N.D. Cal. June 20, 2008), Docket No. 48. Again, the

6  Court granted in part and denied in part Ms. Berry's motion. In its August 27, 2008 Order the

7  Court granted Ms. Berry's motion as to Juniper's 2002 and 2003 proxy statements, holding that the

8  First Amended Complaint failed to "tie specific backdated options for which Berry was responsible

9  to the various allegedly false proxies." *SEC v. Berry*, 2008 WL 4065865, at *6 (N.D. Cal. Aug. 27,

10  2008). The Court ordered the SEC to amend its allegations regarding those proxies "to clearly

11  show the nexus between Berry's acts and the falsity of the financial statements in the proxies." *Id.*

12  Judge Whyte noted that "[w]hat the SEC has not alleged is Berry's role in making those [Juniper]

13  statements." *Id.* at *5, n. 5. In holding that the SEC had sufficiently met its pleading burden on

14  Section 10(b) claims for statements at Juniper that Ms. Berry had not made, Judge Whyte relied

15  wholly upon an adverse inference from Ms. Berry's invocation of her constitutional right to silence

16  during the SEC's investigation. *Id.* The Court granted (with leave to amend) Ms. Berry's motion

17  to dismiss the SEC's scheme liability claims because the SEC "fail[ed] to engage" Ms. Berry's

18  argument that the SEC had "failed to allege any conduct other than misrepresentations, failed to

19  allege the 'scheme' with particularity, and failed to plead that the allegedly deceptive conduct bore

20  any relationship to the sale of a security." *Id.* at *8.

21  **III.    LEGAL STANDARDS**

22      **A.    The Heightened Pleading Standards Applicable to a Securities Class Action**

23      Plaintiffs' Complaint is reviewed under the exacting standards of both the Reform Act and

24  Federal Rule of Civil Procedure 9(b). *See In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 1006,

25  1014 (9th Cir. 2005); *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001). To state a securities

26  fraud claim under Section 10(b) of the Exchange Act and Rule 10b-5, private plaintiffs must allege

27  facts showing a statement: (1) made in connection with the purchase or sale of a security, (2) that

28  was false when made (or misleading by omission), (3) of a material fact, (4) made with scienter,

1    (5) on which plaintiffs justifiably relied, (6) that proximately caused their injury.  *Dura Pharms.,*

2    *Inc. v. Broudo*, 544 U.S. 336 (2005).

3            The Reform Act strengthened Rule 9(b)'s stringent pleading requirements in securities

4    fraud cases by requiring that plaintiffs "plead with particularity both falsity and scienter."

5    *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (quoting *Ronconi*, 253 F.3d at 429).

6    Under the Reform Act's strict standards, plaintiffs must "specify each statement alleged to have

7    been misleading, the reason or reasons why the statement is misleading, and, if an allegation

8    regarding the statement or omission is made on information and belief, the complaint shall state

9    with particularity all facts on which that belief is formed."  *Gompper*, 298 F.3d at 895 (quoting

10   §78u-4(b)(1)).  Plaintiffs may not rely on group pleading to meet their pleading burden.  *See*

11   *McCasland v. FormFactor Inc.*, 2008 WL 2951275, at *11 (N.D. Cal. July 25, 2008) (finding that

12   "courts in this circuit indicate that … this doctrine is no longer viable in light of the PSLRA's

13   heightened pleading standards requiring plaintiffs to allege particularized facts regarding

14   individual defendants") (citing *In re NextCard, Inc. Sec. Litig*., 2006 WL 708663 *3 (N.D. Cal.

15   Mar. 20, 2006); *In re Silicon Storage*, 2006 WL 648683 *22 (N.D. Cal. Mar. 10, 2006)); *see also*

16   *In re Netopia, Inc., Sec. Litig*., 2005 WL 3445631, at *6 (N.D. Cal. Dec. 15, 2005) (Whyte, J.)

17   Rather, the PSLRA "requires securities fraud plaintiffs to plead 'in great detail' that each defendant

18   participated in making false or misleading statements of present or historical fact."  *Shurkin v.*

19   *Golden State Vintners Inc*., 471 F. Supp. 2d 998, 1016 (N.D. Cal. 2006) (quotation omitted).

20           Moreover, the Reform Act requires that a plaintiffs "state with particularity facts giving rise

21   to a *strong inference* that the defendant[s] acted with the required state of mind" and must do so for

22   "each act or omission alleged to violate" Rule 10b-5.  15 U.S.C. 78u-4(b)(2) (emphasis added);

23   *Gompper*, 298 F.3d at 895.  The Ninth Circuit has defined scienter as a mental state encompassing

24   either the intent to defraud or egregious recklessness reflecting intentional or conscious

25   misconduct.  *See In re Silicon Graphics Inc Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999).  Plaintiffs

26   must therefore allege "specific facts indicating no less than a degree of recklessness that strongly

27   suggests actual intent."  *Id*. at 979.  In restatement cases, the mere fact of the restatement does not

28   by itself establish a violation of Rule 10b-5 and does not, standing alone, establish scienter. *See In*

1   *re Connectics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1012 (N.D. Cal. 2008) (citing *DSAM Global*

2   *Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390-91 (9th Cir. 2002)).

3          Although well-pleaded facts are accepted as true, "[c]onclusory allegations of law and

4   unwarranted inferences are insufficient to defeat a motion to dismiss . . . ." *In re Verifone Sec.*

5   *Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).  Furthermore, the Court must consider all reasonable

6   inferences to be drawn from the complaint, including inferences unfavorable to plaintiffs.

7   *Gompper*, 298 F.3d at 897.  A court must dismiss cases that allege facts creating only speculative

8   or illogical inferences that defendants acted with fraudulent intent.  *Silicon Graphics*, 183 F.3d at

9   985.

10         Plaintiffs' heavy reliance on the SEC's enforcement action and Judge Whyte's orders

11  allowing portions of the SEC's complaint against Ms. Berry to proceed misses the mark.  The

12  Reform Act imposes a higher pleading burden upon private plaintiffs than that required of the

13  SEC.   In particular, in an enforcement action, the SEC may allege scienter generally.  *SEC v.*

14  *Berry*, 2008 WL 2002537, at *8 (citing *SEC v. Levin,* 232 F.R.D. 619, 623 (C.D. Cal. 2005); *SEC*

15  *v. ICN Pharmaceuticals, Inc.,* 84 F. Supp. 2d 1097, 1098-99 (C.D. Cal. 2000)).  Accordingly, it is

16  inappropriate for Plaintiffs to rely upon rulings in the SEC enforcement action to sustain their

17  burden here.  Plaintiffs overstate Judge Whyte's May 7, 2008 order when they contend that it

18  virtually establishes Ms. Berry's scienter.  Judge Whyte simply held that the SEC is not subject to

19  the Reform Act and therefore needed to plead – without specifics – that Ms. Berry intended to

20  defraud.  *SEC v. Berry*, 2008 WL 2002537, at *8.  Moreover, Judge Whyte relied exclusively in his

21  subsequent Order granting in part and denying in part Ms. Berry's motion to dismiss the First

22  Amended Complaint upon an adverse inference to conclude that Ms. Berry's role in Juniper's

23  public filings was sufficient to state a claim.  *SEC v. Berry*, 2008 WL 4065865 at *5, n. 5.

24  Reliance on such adverse inferences would be inappropriate for these civil plaintiffs.  *See SEC v.*

25  *Parnes*, 2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001) (requiring the SEC to plead both the

26  circumstances of the alleged fraud with particularity and a strong inference of scienter, because the

27  SEC "cannot dispense, merely because a defendant invoked the Fifth Amendment privilege during

28  the investigation, with the obligation to provide each defendant with fair notice of the specific

1   conduct with which he is charged"); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 490 F. Supp.

2   2d 784, 825-26 (S.D. Tex. 2007) (adverse inference inappropriate on a motion to dismiss unless the

3   alleged fraud was "'peculiarly within' [defendant's] knowledge and . . . the information is not

4   available from any other source").  This is particularly so when equally plausible inferences can be

5   drawn from an individual's invocation of constitutional protections.  *See Tellabs Inc. v. Makor*

6   *Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007) (in evaluating the complaint, court must

7   consider all "opposing inferences of nonfraudulent intent"); *Ohio v. Reiner*, 532 U.S. 17, 21 (2001)

8   (*per curiam*) (one of the Fifth Amendment's basic functions is to protect innocent individuals who

9   otherwise might be ensnared by ambiguous circumstances).  Judge Whyte's ruling in the SEC

10  enforcement action does not absolve Plaintiffs from coming forth with particularized facts that

11  satisfy the Reform Act.

12  **IV.    ARGUMENT**

13      **A.    The Majority of Plaintiffs' Claims Against Ms. Berry Are Time-Barred**

14          An action for securities fraud must be commenced within "the earlier of: (1) two years after

15  the discovery of the facts constituting the violation; or (2) five years after such violation."  28

16  U.S.C. § 1658(b).  A violation occurs on the date the allegedly false or misleading statement was

17  made, *i.e.*, the date of the press release or the date a Form 10-K was filed with the SEC.  *Lampf,*

18  *Pleva, Lipkind, Prupis & Petigrow v. Gibertson*, 501 U.S. 350, 363-64 (1991);  *In re Exxon Mobil*

19  *Corp Sec. Litig.*, 387 F. Supp. 2d 407, 422 (D.N.J. 2005).

20          Plaintiffs sued Ms. Berry on January 14, 2008.  Plaintiffs allege claims against Ms. Berry

21  based on a total of 69 of Juniper's public filings and statements stretching back to July 30, 1999.

22  ¶139.  Under the five-year period of repose, any claim based on statements made prior to January

23  14, 2003 is absolutely time-barred.  *See In re Juniper Networks.*, 542 F. Supp. 2d at 1051 (ruling

24  that plaintiffs may not base claims on statements made prior to the five-year statute of repose).[5]

---

25        [5]  Plaintiffs may not invoke the "relation back doctrine" to avoid the time-bar.  That

26  doctrine applies where an *amended* pleading adds a new defendant, who "knew or should have
    known that, but for a mistake concerning the identity of the proper party, the action would have

27  been brought against the party."  Fed.R.Civ.P. 15(c)(3)(ii).  Here, Plaintiffs filed a separate action
    against Ms. Berry.  Moreover, Plaintiffs do not plead any facts that would entitled them to invoke

28  Rule 15(c)(3).  *See In re Stac Electronics Sec. Litig.*, 89 F.3d. 1399, 1411 (9th Cir. 1996) (finding

1   Following application of this period of repose, only ten Juniper statements remain in dispute:

| Type of Filing | Date | Specific Allegations Regarding Ms. Berry's Role | Signed and/or Certified by |
|---|---|---|---|
| Press release regarding Juniper's Q4 2002 and year-end 2002 financial results (¶ 141) | 1/16/03 | None | N/A |
| Form 10-K (¶¶ 142-147) | 3/11/03 | None | Signed by Kriens, Gani, Sindhu and directors Hearst, Khosla, Kramlich, Sclavos, Stensrud <br><br> Certified by Kriens and Gani |
| Proxy Statement (¶¶ 127, 132, 134, 135, 137) | 3/28/03 | Ms. Berry "drafted" and "signed" the Proxy Statement. (¶ 26) | Notice of 2003 Annual Meeting of Shareholders signed by Ms. Berry |
| Forms 8-K (¶¶ 149, 154, 159) | 4/10/03 <br> 7/10/03 <br> 10/9/03 | None | Signed by Gani |
| Forms 10-Q (¶¶ 150-152, 155-158, 160-163) | 5/8/03 <br> 8/7/03 <br> 11/14/03 | None | Signed by Gani <br><br> Certified by Kriens and Gani |
| Form S-3/A | 11/5/03 | Ms. Berry was "integrally involved with the preparation of the Notes Registration Statement." (¶ 166) | Signed by directors Calderoni and Goldman <br><br> Signed by directors Kriens, Gani, Sindhu, Hearst, Khosla, Kenneth Levy, Sclavos and Stensrud, signatures executed by Ms. Berry as attorney-in-fact |

As discussed below, Ms. Berry is not alleged to have made *any* of those ten statements.

**B.    Plaintiffs Do Not Adequately Plead Ms. Berry's Primary Liability For Any Alleged False Statement Or Omission**

The heightened pleading requirements of the Reform Act and Rule 9(b) require a plaintiff

---

claims against defendants added in an amended complaint were time barred): *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1099 (N.D. Cal. 1994); *aff'd*, 95 F.3d 922 (9th Cir. 1996) (same, noting that "the relevant inquiry focuses on when the plaintiff first had notice of the defendant's correct identity, not on when the plaintiff first had notice of the defendant's culpability").

1  to attribute particular misstatements to particular defendants. A complaint that fails to do so does

2  not plead fraud with the requisite degree of particularity. *See Neubronner v. Milken*, 6 F.3d 666,

3  673 (9th Cir. 1993). To plead that Ms. Berry "made" a misstatement, plaintiffs must allege that

4  she either (1) signed a public filing containing a misstatement or (2) substantially participated or

5  was intricately involved in the preparation of allegedly fraudulent statements she did not make or

6  sign. *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n.5 (9th Cir. 2000). To survive a motion

7  to dismiss on a "substantial participation" theory, plaintiffs must "state, *with particularity*, facts

8  indicating that the individual defendant was *directly involved* in the preparation of the allegedly

9  misleading statements." *In re ESS Tech., Inc. Sec. Litig.*, 2004 WL 3030058, at *12 (N.D. Cal.

10 Dec. 1, 2004) (emphasis added). The Complaint fails to meet either standard.

11      Plaintiffs have pled no fact that would establish that Ms. Berry actually made any claimed

12 misrepresentation. Nor are Plaintiffs' vague, generalized allegations about Ms. Berry's so-called

13 participation in the preparation of Juniper's public filings sufficient to establish she should be

14 liable for statements that she demonstrably did not make.

15
16      **1.      Plaintiffs Have Failed To Allege That Ms. Berry Substantially
                 Participated In The Preparation Of Any Alleged Misstatement**

17      Plaintiffs do not directly attribute alleged misrepresentations in any of Juniper's Forms 10-

18 K, 10-Q, 8-K or S-8 to Ms. Berry. Rather, they rely on their naked assertion that she "substantially

19 participated" in the preparation of these filings (¶ 139) without providing any specific detail about

20 her purported involvement or any particularized facts that made each of the multiple filings

21 encompassed materially false. Plaintiffs do not allege that Ms. Berry signed any of these filings, as

22 they do with Mr. Kriens and Mr. Gani. Plaintiffs plead no facts describing what role, if any, Ms.

23 Berry played in preparing any of Juniper's filings. The vague allegations that Ms. Berry was

24 "integrally involved in drafting, reviewing, and/or discussing Juniper's financial results contained

25 in SEC reports and earnings releases" (¶ 126) or "substantially participated in the disclosures

26 relating to stock options and executive compensation and internal controls" (¶ 140) are legally

27 insufficient. As Judge Whyte has already held with respect to the SEC's even more fulsome

28 allegations in its original complaint against Ms. Berry, such conclusory pleading "fall[s] short" of

1    Plaintiffs' burden to plead Ms. Berry's substantial or intricate involvement in any false statement.

2    *SEC v. Berry*, 2008 WL 2002537 at *10.  Plaintiffs' allegations fail to state a claim for several

3    reasons.

4          *First*, none of Plaintiffs' allegations comes even close to meeting the threshold for

5    "substantial or intricate involvement" required to state a claim.  Plaintiffs must plead particularized

6    facts showing direct involvement in the making of an allegedly false statement.  *In re Tibco*

7    *Software, Inc.*, 2006 WL 1469654, at *28 (N.D. Cal. May 25, 2006) ("Plaintiffs must plead that the

8    officer was directly involved not only in the day-to-day affairs of the company in general but also

9    in the preparation of its allegedly misleading statements in particular.")  The Complaint suffers

10   from a glaring absence of facts connecting Ms. Berry to any allegedly false statement.  *See In re*

11   *Seracare Life Sciences, Inc. Sec. Litig.*, 2007 WL 935583, at *10 (S.D. Cal. Mar. 19, 2007)

12   (allegations that defendant "participated in editing and approving the 10-Qs, and that [defendant]

13   evaluated them, falls significantly short of the type of participation that the Ninth Circuit found

14   sufficed to establish liability under a substantial participation theory"); *Siemers v. Wells Fargo &*

15   *Co.*, 2007 WL 760750, at *19 (N.D. Cal. Mar. 9, 2007) (allegations that defendant "provided

16   comments and edits" and "reviewed passages" of certain public filings failed to plead "substantial

17   participation"); *SEC v. Todd*, 2007 WL 1574756, at *4 (S.D. Cal. May 30, 2007) (allegations that

18   defendants signed management representation letter to the auditors in connection with a particular

19   Form 10-Q held insufficient to establish "substantial participation in the drafting of the 10-Q").

20         *Second*, while these allegations might allude to Ms. Berry's purported administrative role

21   in finalizing SEC filings generally, they do not sufficiently plead that Ms. Berry had any

22   substantive role in any statement concerning the company's accounting or financial statements, let

23   alone particular involvement in alleged misstatements about APB 25 in the footnotes to Juniper's

24   audited financial statements.  *Cf.* ¶¶ 143-144, 156 (citing the APB 25 language in the 10-Ks and

25   10-Qs as the alleged misstatement).  Nor do they suggest that Ms. Berry prepared the discussion

26   regarding internal controls in the Company's press releases and earnings releases.  *Cf.* ¶¶ 145

27   (citing language regarding internal controls in a 10-K as the alleged misstatement).  Plaintiffs'

28   inability to specifically allege that Ms. Berry finalized the allegedly misleading passages in these

- 12 -

1    public statements is fatal to their claims.  Where "there is no allegation that the passages of the

2    [financial statements] reviewed by [defendant] were the passages that were misleading," the

3    Complaint "fall[s] far short of demonstrating substantial participation or intricate involvement."

4    *Siemers*, 2007 WL 760750, at *19 (internal quotations omitted).

5           Here, Plaintiffs do not allege that Ms. Berry had any role in the preparation of the

6    accounting for or disclosures regarding stock options grants or, more generally, in the preparation

7    of Juniper's financial statements.  Juniper had an accounting and finance department whose duties

8    included preparation and review of financial statements.  These public filings contain lengthy

9    descriptions of Juniper's business and/or finances and cover numerous topics.  *See, e.g.*, RJN, Ex.

10   C.  Absent particularized allegations that would, if true, establish that Ms. Berry acted as the

11   decision maker regarding specific misstatements in the financial statements, the Berry Complaint

12   fails to state a claim for a primary violation of the securities laws.

13          *Third*, Plaintiffs do not link any of their conclusory allegations to any particular filing that

14   they challenge.  Indeed, the Berry Complaint remains bereft of a single particularized allegation

15   that Ms. Berry had any substantive role with respect to any allegedly false public statement.

16   Plaintiffs' failure to connect Ms. Berry's involvement in Juniper filings to the claimed

17   misrepresentations is fatal to their claims.  *Siemers*, 2007 WL 760750, at *19; *In re Enron Corp.*

18   *Sec. Litig.*, 235 F. Supp. 2d at 588.

19                          **2.    Plaintiffs Have Failed To Allege The Falsity Of Any Public Filing That**
20                                  **They Claim Ms. Berry "Signed"**

21          Plaintiffs "must adequately specify the statements it claims were false or misleading, give

22   particulars as to the respect in which [it] contends statements were fraudulent, state when and

23   where the statements were made, and identify those responsible for the statements."  *In re*

24   *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994).  To satisfy this standard,

25   Plaintiffs must provide "specific references" to "specific facts" as the basis for an allegation that a

26   statement is false or misleading.  *Wenger v. Lumisys*, 2 F. Supp. 2d 1231, 1250 (N.D. Cal. 1998).

27   Failure to plead fraud with the requisite specificity results in dismissal.  *Moore v. Kayport Package*

28   *Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  As to the filings that Plaintiffs allege Ms. Berry

did actually sign – notices sent to Juniper shareholders announcing Juniper's annual shareholder meetings and the S-3 registration statement for a Note Juniper issued in November 2003 – Plaintiffs do not allege that these filings were false when filed.

### a.    The Juniper proxy statement notices

The Berry Complaint alleges that Ms. Berry "signed as Juniper's General Counsel" Juniper proxy statements for 2000 through 2003.  ¶ 26. Only one of those – the 2002 Proxy – was published after the statute of repose cut-off.  *See* RJN Ex. A.  Judicially noticeable facts establish that Ms. Berry did *not* sign Juniper's proxy statements, but rather signed only the *meeting notices* attached to the proxy statements.  *Id.*  While the Berry Complaint alleges that the executive compensation disclosures in Juniper's proxy statements were false (albeit in a vague, conclusory fashion and without identifying any specific grants that were backdated) (¶¶  127-137), it does not allege that the meeting notices themselves were false.  And how could it?  The notices merely stated that Juniper planned to hold the annual shareholder meeting on a certain date and listed the agenda for the meeting.  *Id.*[6]  Notably, Plaintiffs do not identify any specific facts indicating that Ms. Berry would have known about, or been involved in, backdating grants that were disclosed in that proxy statement.[7]  *SEC v. Berry*, 2008 WL 4065865, at *6 (requiring SEC to tie specific backdated options and allegations of Ms. Berry's involvement in granting those options to the allegedly false proxies).  Nor do they allege with any particularity Ms. Berry's involvement in the preparation of any of the proxies, let alone the one on which any claim here could be based.

### b.    2003 Note Registration Statement

Plaintiffs allege that Ms. Berry should be held responsible for any purported misrepresentations in Juniper's November 2003 Form S-3 registering $400 million in Zero Coupon Convertible Senior Notes, based on nothing more than the fact that her name (along with the names

---

[6] As an apparent fallback, Plaintiffs allege that Ms. Berry "drafted" the proxy statements." ¶ 124.  For the reasons shown above, at 11-13, these allegations fail to meet the required "substantial participation" threshold.  *See also In re Seracare*, 2007 WL 935583, at *10.

[7] Plaintiffs conclusorily allege that Ms. Berry "misrepresented" in the 2003 proxy statement the date on which grants to Mr. Kriens, Mr. Sindhu, Mr. Gani and Lloyd Carney were made.  However, they plead no specific facts indicating that Ms. Berry was responsible for making or accounting for any of the executive grants reported in that proxy.  ¶ 116.

1  of four attorneys from Juniper's outside law firm) appears on the cover of the registration

2  statement as the "designated contact" of Juniper and that she signed it as "attorney-in-fact" for Mr.

3  Kriens, Mr. Gani, Mr. Sindhu and several outside directors. ¶ 166-7; *see* RJN Ex. J. However,

4  leaving aside Plaintiffs' questionable basis for concluding that Ms. Berry "made" any statement at

5  all in the Form S-3, the Complaint also fails to specify, with any particularity, how Ms. Berry's

6  statement is false. This failure is unacceptable under Rule 9(b). *Neubronner v. Milken*, 6 F.3d at

7  671 (plaintiff must identify the circumstances constituting falsity so that a defendant may prepare

8  an adequate answer, "not just deny that they have done anything wrong").

9        **C.**      **Plaintiffs Fail To Adequately Plead "Scheme Liability"**

10        At bottom, the Complaint filed against Ms. Berry amounts to a private "scheme liability"

11  action of the very sort precluded by settled law and sound policy.   The Supreme Court has made

12  clear that "scheme liability" is available, if at all, only under very "narrow" circumstances and that

13  aiding and abetting claims are reserved to the SEC. *Stoneridge Investment Partners, LLC v.*

14  *Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 774 (2008). In light of *Stoneridge* and the underlying

15  principles on which it is based, it is impermissible for private plaintiffs to assert claims against a

16  secondary actor in the guise of a primary liability action. Plaintiffs' pleading – a transparent

17  attempt to avoid their burden of alleging specific material misstatements or omissions in a public

18  filing that Ms. Berry signed or substantially participated in preparing – fails to meet the governing

19  legal standard for "scheme liability."

20        **1.**      **Scheme Liability Is Narrowly Construed Under *Stoneridge***

21        In *Stoneridge*, the Supreme Court considered the scope of primary liability of a "secondary

22  actor" (*i.e.*, someone who does not herself make the allegedly false statement or omission or

23  engage in the conduct that allegedly deceives investors, in this case the allegedly misstated

24  financial statements) under Rules 10b-5(a) and (c). There, the defendant secondary actors were

25  suppliers to Charter Communications, Inc., the company in which plaintiffs had invested; plaintiffs

26  alleged that these suppliers entered into sham transactions with Charter knowingly or recklessly

27  disregarding that Charter intended to use the transactions to inflate its revenues and that investors

28  would rely on Charter's resulting allegedly false financial statements. *See Stoneridge*, 128 S. Ct. at

766-67.

The Court affirmed Rule 12(b)(6) dismissal of the complaint in that action, concluding that any "scheme" theory of primary liability under Rule 10b-5(a) or (c) must be interpreted with "narrow dimensions" given that it was "a right of action Congress did not authorize when it first enacted the statute and did not expand when it revisited the law." *Id*. at 774.  Since the defendant secondary actors' deceptive acts were not communicated to the public, the Court ultimately held that their participation was "too remote to satisfy the requirement of reliance." *Id.* at 770.  The Court also suggested that defendants' conduct failed the "in connection with" the purchase or sale of securities requirement.  *Id*. ("§ 10(b) provides that the deceptive act must be 'in connection with the purchase or sale of any security.' … [T]he emphasis on a purchase or sale of securities does provide some insight into the deceptive acts that concerned the enacting Congress.")  Finally, expressing concern that the *Stoneridge* plaintiffs' "view of primary liability makes any aider and abettor liable under § 10(b) if he or she committed a deceptive act in the process of providing assistance," the Court made clear that such secondary liability is conceptually distinct from – and may not be relabeled by Plaintiffs as – Rule 10b-5(a) or (c) primary liability.  *See id*. at 769 (for primary liability to attach, "[t]he conduct of a secondary actor must satisfy each of the elements or preconditions for liability").

The lower courts have consistently interpreted *Stoneridge* as "ultimately reject[ing] an expansion of liability under section 10(b) premised on a broad conception of scheme liability." *In re DVI*, *Inc. Sec. Litig.*, 249 F.R.D. 196, 217 (E.D. Pa. 2008).  The lower courts have also interpreted *Stoneridge* to require the dismissal of charges against corporate officers or employees for their conduct that allegedly resulted in materially misstated financial statements but who did not themselves sign or make any actionable statements.[8]

---

[8]  *See, e.g., Pugh v. Tribune Co.*, 521 F.3d 686, 696-98 (7th Cir. 2008) (affirming Rule 12(b)(6) dismissal with prejudice of scheme liability claims against employee who had pled guilty to criminal conduct and was the so-called "mastermind" of a "scheme" to overstate newspaper circulation numbers; "Sito participated in a fraudulent scheme but had no role in preparing or disseminating Tribune's financial statements or press releases."); *Katz v. Image Innovations Holdings, Inc.*, 542 F. Supp. 2d 269, 272-73 (S.D.N.Y. 2008) (Rule 12(b)(6) dismissal of scheme liability allegations as to all corporate officer defendants who did not sign the allegedly fraudulent financial statements because, *inter alia*, the amended complaint "fails to particularize any material

1

### 2.   Plaintiffs Have Failed To Plead A Viable Scheme Liability Claim

2

3

#### a.   Plaintiffs do no more than allege that Ms. Berry aided and abetted the making of false statements by others

4        Despite *Stoneridge*'s mandates, Plaintiffs seek to repackage their case as a "scheme

5   liability" case, and to characterize Ms. Berry as a primary violator in a so-called "scheme" as

6   opposed to an aider and abettor of the false statements of others.  *See* ¶¶ 5, 257 & 258.  In truth,

7   however, this is a case challenging Ms. Berry's conduct in purportedly aiding and abetting

8   Juniper's issuance of allegedly materially false financial statements.  *Central Bank of Denver, N.A.*

9   *v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (holding that there is no private

10   right of action for aiding and abetting a §10(b) violation).

11        A plaintiff may not – as Plaintiffs plainly attempt to do here – simply invoke the word

12   "scheme" in an attempt to recast a "statement that is, in essence, a misrepresentation (or omission)

13   claim under subsection (b) … as a claim under subsection (a) or (c) so as to evade the pleading

14   requirements which apply in misrepresentation cases."  *Steed v. Warrior Capital, LLC*, 2007 WL

15   1110757, at *5 (W.D. Okla. Apr. 11, 2007).  Nor may a plaintiff circumvent the limitations on Rule

16   10b-5(b) liability for non-speakers by pleading "scheme" liability; specifically, a plaintiff may not

17   "circumvent *Central Bank*'s limitations on liability for a secondary actor's involvement in the

18   preparation of false and misleading statements," *In re Dynegy Sec. Litig.*, 339 F. Supp. 2d 804, 916

19   (S.D. Tex. 2004), by "resurrecting aiding and abetting liability under the guise of primary liability

20   for a fraudulent scheme."  *Burnett v. Rowzee*, 2008 WL 638503, at *4 (C.D. Cal. Feb. 11, 2008).

21   Thus, participation in a scheme through which misleading statements were made does not satisfy

22   the pleading burden under Rules 10b-5(a) or (c) and may not be used as a "back door into liability

23

---

24   misstatements or omissions by these defendants"); *Dura Pharms., Inc. Sec. Litig.*, 548 F. Supp. 2d
     1126, 1140 (S.D. Cal. 2008) (Rule 12(b)(6) dismissal of scheme liability allegations because, *inter*

25   *alia*, plaintiffs did not allege that corporate officer defendant "made any materially false
     statements"); *but see In re Atmel Corp. Deriv. Litig.*, 2008 WL 2561957 (N.D. Cal. June 25, 2008)

26   (holding that plaintiffs had sufficiently alleged "deceptive conduct" of former general counsel
     based on Company press release announcing Audit Committee's conclusion that "'the evidence

27   indicated that [the former general counsel] lacked management integrity with respect to the stock
     option process,'" without discussion of reliance or "in connection with" elements of a "scheme

28   liability" claim).

1    for those who help others make a false statement or omission." *In re Parmalat Sec. Litig.*, 376 F.

2    Supp. 2d 472, 503 (S.D.N.Y. 2005); *see also In re Royal Dutch/Shell Transport Sec. Litig.*, 2006

3    WL 2355402, at \*8 (D.N.J. Aug. 14, 2006); *Regents of the Univ. of Cal. v. Credit Suisse First*

4    *Boston*, 482 F.3d 372, 378, 390 (5th Cir. 2007).

5              Here, while Plaintiffs purport to plead a "scheme" liability case against Ms. Berry relating

6    to allegedly "backdated" option grants, the allegations in their Complaint make clear that the

7    gravamen of Plaintiffs' claims is the allegedly false financial statements that resulted from alleged

8    improper accounting for option grants, and Ms. Berry's purported participation in making those

9    statements:  "From June 1999 through 2003, defendant Berry and other Juniper senior executives

10   *falsified financial statements* and backdated option grants to purchase millions of shares of stock

11   . . . Berry and other Juniper executives *falsely reported how Juniper granted these options* in order

12   to conceal their backdating scheme."  ¶ 2 (emphasis added).  It is thus apparent that the "so-called

13   'deception'" that forms the basis of Plaintiffs' "scheme" liability claim "is nothing more than a

14   reiteration of the misrepresentations and omissions that underlie [its] disclosure claim." *TCS*

15   *Capital Management, LLC v. Apaz Partners, L.P.*, 2008 WL 650385, at \*22 (S.D.N.Y. Mar. 7,

16   2008).  As that post-*Stoneridge* case held, such an attempt to "re-labe[l] the alleged misstatements

17   and omissions as 'manipulative and deceptive conduct'" does not "magically transform [the

18   Plaintiffs'] disclosure claim into a [scheme liability] claim." *Id.*; *see also In re Ditech Networks,*

19   *Inc. Deriv. Litig.*, 2007 WL 2070300, at \*6 (N.D. Cal. July 16, 2007) (dismissing Rule 10b-5(a)

20   and (c) claims based on stock option "backdating" because of the complaint's "emphasis on the

21   alleged production and dissemination of false financial statements, proxy statements, and Form

22   4's."); *In re Apple Computer Inc., Deriv. Litig.*, 2007 WL 4170566, at \*7 n.9 (N.D. Cal. Nov. 19,

23   2007) (pre-*Stoneridge* decision in options case against corporate officers and directors allowing

24   plaintiffs to plead scheme liability in amended complaint but expressing "considerable doubt that

25   Plaintiffs will be able to state a claim for scheme liability").  Since Plaintiffs have failed to plead

26   any "scheme" allegations against Ms. Berry, apart from her alleged participation in

27   misrepresentations regarding Juniper's stock options, this Court should similarly limit its focus to

28   claims under Rule 10b-5(b).

1
2

**b.    Plaintiffs do not allege reliance upon any deceptive acts and not satisfy the "in connection with" requirement**

3    The Supreme Court premised its holding in *Stoneridge* on the fact that the plaintiffs had not

4    alleged – and could not allege – that they relied on the customers' and suppliers' conduct.

5    "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b)

6    private causes of action." *Stoneridge*, 128 S.Ct. at 769.  As a practical matter, the *Stoneridge*

7    investors lacked "knowledge, either actual or presumed, of respondents' deceptive acts during the

8    relevant times." *Id.*  Here, Plaintiffs do not identify any specific deceptive conduct by Ms. Berry

9    independent from the alleged financial misstatements nor do they allege how they had "knowledge,

10   either actual or presumed, of [Ms. Berry's] deceptive acts" during the putative class period. *Id.*

11   Moreover, even in a scheme liability case, "§ 10(b) provides that the deceptive act must be

12   'in connection with the purchase or sale of any security.'"  *Stoneridge*, 128 S. Ct. at 770.  While

13   this standard is to be liberally construed (*see SEC v. Zandford*, 535 U.S. 813 (2002)), its bounds

14   are not limitless.  Rather, "it is imperative that the Court limit its consideration to allegations

15   relevant to the purchase or sale of securities." *Burnett*, 2008 WL 638503 at *4.  In *Burnett*, the

16   court held insufficient allegations that one of the defendants erased data on his laptop in

17   furtherance of a purported Ponzi scheme.  According to the court, such allegations "concern the

18   functioning of the . . .  scheme rather than the sale of securities pursuant to that scheme" and were

19   therefore insufficient under *Stoneridge*. *Id.* at *5.  The same defect permeates Plaintiffs'

20   allegations.  Plaintiffs' allegations against Ms. Berry do not satisfy the "in connection with"

21   requirement.  As in *Burnett*, Plaintiff, with respect to Ms. Berry, describes her internal conduct at

22   Juniper, but does not make the required allegations to connect her to the purchase or sale of

23   securities.  Accordingly, Plaintiffs have not sufficiently pled a scheme liability claim against Ms.

24   Berry.

25   **D.    Plaintiffs Fail To Allege Facts Giving Rise To A Strong Inference Of Scienter**

26   Plaintiffs also fail to satisfy the Reform Act's strict standard for pleading scienter.  The law

27   requires that to allege scienter, a plaintiff must "state with particularity facts giving rise to a *strong*

28   inference that the defendant acted with the required state of mind." *Gompper*, 298 F.3d at 894

- 19 -

1  (quoting 15 U.S.C. § 78u-4(b)(2)) (emphasis added in *Gompper*); *see also In re Silicon Graphics*,

2  183 F.3d at 974 (facts must come closer to demonstrating intent as opposed to mere motive and

3  opportunity).  The Ninth Circuit requires plaintiffs "plead, in great detail, facts that constitute

4  strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon*

5  *Graphics*, 183 F.3d at 974.  Thus, the complaint must allege that each defendant made false or

6  misleading statements either intentionally or with deliberate recklessness.  *Id.*

7           When determining whether plaintiffs have pled a strong inference of scienter, the Court

8  must consider *all* reasonable inferences to be drawn from the allegations, including inferences

9  unfavorable to the plaintiffs.  *Gompper*, 298 F.3d at 897.  The Court must consider "not only

10  inferences urged by the plaintiff, … but also the competing inferences rationally drawn from the

11  facts alleged." *Tellabs Inc.,* 127 S. Ct. at 2504.  An inference of scienter is "strong" only if it is

12  "more than merely plausible or reasonable – it must be cogent and at least as compelling as any

13  opposing inference of nonfraudulent intent." *Id.*  The Court must decide whether "*all* of the facts

14  alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual

15  allegation, scrutinized in isolation, meets that standard." *Id.* at 2509;  *South Ferry LP, No. 2 v.*

16  *Killinger*, 2008 WL 4138237, at * 5 (9th Cir. Sep. 9, 2008) (finding that "*Tellabs* counsels us to

17  consider the totality of circumstances, rather than to develop separately rules of thumb for each

18  type of scienter allegation.")

19            Plaintiffs rely heavily on the SEC's enforcement action against Ms. Berry to plead their

20  Section 10(b) claim and allege no independent grounds to establish the strong inference of scienter

21  they are required to plead here.  ¶¶ 223-4, 227.  Relying on the SEC's allegations – especially

22  where the SEC is not required to allege scienter with the specificity required here – is insufficient.

23  *See SEC v. Berry*, 2008 WL 2002537 at *8 (holding that SEC is only required to plead scienter

24  generally).  Moreover, because Plaintiffs' allegations are made on information and belief, they

25  must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1);

26  *see also In re Silicon Graphics*, 183 F.3d at 984-85; *Kayport Package Exp.*, 885 F.2d at 541

27  (where plaintiffs plead on information and belief, they must nevertheless still plead "the

28  misrepresentations themselves with particularity and, where possible, the roles of the individual

1  defendants in the misrepresentations").

2      Plaintiffs' reliance upon Juniper's Restatement to establish scienter is likewise misplaced.

3  Plaintiffs allege that "Juniper's Audit Committee conducted an independent investigation in which

4  it identified serious concerns regarding the actions of certain former management in connection

5  with the stock option granting process. This *reference* to former management at a *minimum*

6  *implicates* former SOC member Berry (and Gani)." ¶ 233 (emphasis added). Beyond this

7  speculative assumption, the Complaint filed against Ms. Berry contains few, if any, allegations that

8  are specific to Ms. Berry or that distinguish her role from the allegations made against the other

9  members of the SOC in the Consolidated Complaint. Nor is there any allegation that she ever

10  concealed the process from anyone within or outside the Company. Neither the mere fact that Ms.

11  Berry was a former member of Juniper management nor the Complaint's conclusory allegation

12  regarding the Audit Committee's internal investigation, without any specific, particularized factual

13  allegations as to what the investigation found, are sufficient to create a strong inference of scienter.

14  *See In re Silicon Graphics, Inc. Sec. Litig*, 970 F. Supp. 746, 752 (N.D. Cal. 1997) (plaintiffs are

15  "obligated to 'distinguish among those they sue and enlighten each defendant as to his or her part

16  in the alleged fraud'") (citation omitted); *In re Connectics*, 542 F. Supp. 2d at 1012 (the mere fact

17  that financials have been restated does not permit an inference of scienter).

18      In cases alleging stock option backdating, the courts have distinguished between allegations

19  relating to participation in the stock option administration and granting process and allegations

20  establishing an understanding of the accounting implications of grant pricing. In order to establish

21  the requisite level of scienter, Plaintiffs must allege facts evincing an understanding and disregard

22  of the appropriate accounting for stock options. As Judge Alsup noted in *In re Zoran Corp. Sec.*

23  *Litig.*, 511 F. Supp. 2d 986, 1003-04 (N.D. Cal. 2007):

24          Not each and every single instance where a company has chosen the
            wrong measurement date is necessarily a case of backdating. Use of
25          an incorrect measurement date for stock options could be the result
            of innocent but sloppy accounting practices rather than a fraudulent
26          effort to retrospectively change the grant dates. The Office of the
            Chief Accountant recognized that determining the correct
27          measurement date is a fact-specific endeavor. So too is pleading
            with specificity that stock options were backdated.

28

1    Accordingly, to plead scienter here, Plaintiffs must allege that Ms. Berry knew – or was

2    deliberately reckless in not knowing – that the grant authorization process used by Juniper resulted

3    in the wrong accounting measurement dates under APB 25 and that those dates required the

4    company to record a compensation charge, which it did not do.  *See Weiss v. Amkor Tech., Inc.*,

5    527 F. Supp. 2d 938, 948 (D. Ariz. 2007)(holding that "a complaint must allege specific facts that

6    each individual defendant knew that the accounting for the subject transactions was incorrect at the

7    time it was determined."); *In re Vantive Sec. Litig.*, 283 F.3d 1079, 1090-91 (9th Cir. 2002)

8    (holding that plaintiffs must allege "specific contemporaneous conditions known to the defendants

9    that would strongly suggest that the defendants understood" that the company's financial

10    accounting was improper).  Thus, Plaintiffs must allege facts that show Ms. Berry had the required

11    knowledge of stock option accounting.  *See Weiss*, 527 F. Supp. 2d at 950 (dismissing complaint

12    because "[t]here are no particularized allegations relating to these Defendants' notice of the stock

13    option accounting").

14    Beyond their observation that Mr. Berry "majored in accounting in college" (¶ 23),

15    Plaintiffs plead no facts establishing that Ms. Berry has any specialized finance knowledge – much

16    less knowledge regarding stock option accounting in particular – or that she had *any* responsibility

17    for accounting or the preparation of financial statements at Juniper.  Plaintiffs' conclusory

18    allegation that "[a]s a member of the Stock Option Committee and the top corporate legal officer,

19    Berry was fully aware of . . .  the Company's compensation arrangements, including granting and

20    accounting for Company stock options" (¶ 62), does not set forth specific facts that she knew that

21    compensation charges were required but not taken for grants.   Instead, Plaintiffs rely upon the

22    generalized contention that "the fact that APB No. 25 is simple in its application" supports the

23    "strong inference" that Ms. Berry's involvement in selecting grant dates would make her "well

24    aware of the transaction's consequences to the Company and the recipients."  ¶ 235. [9]  However,

25    Plaintiffs never specifically allege that Ms. Berry was involved in accounting for stock options at

26    _____

[9] As evidenced by the **eighty-five public companies** that issued restatements relating to
27    stock options since 2006, the application of the APB 25 accounting rules to stock option grants was
not straightforward.  *See* http://online.wsj.com/public/resources/documents/info-optionsscore06-
28    full.html.

1  Juniper or that she had any knowledge regarding options accounting.  Even if these allegations

2  suggest that Ms. Berry knew that the date of grants were established with hindsight (which they do

3  not), they do not support an inference that she intentionally and fraudulently participated in the

4  preparation of misstated financial statements with intentional deceit.

5          Plaintiffs' suggestion that the "duration, magnitude and pervasiveness" of the backdating

6  practices at Juniper "support a strong inference of fraudulent conduct by Ms. Berry" (¶ 240)

7  actually supports the contrary inference.  A much more plausible inference can be drawn from a

8  long-term practice –  that the flawed practice, once incorrectly but innocently established,

9  continued in place for a long time because no one realized the error of the practice.

10          Plaintiffs try to evade the Reform Act's stringent particularity requirements for pleading

11  scienter by alleging that "[b]y reason of [Ms. Berry's] multiple positions as an officer and general

12  counsel of Juniper and as a member of the Stock Option Committee … Berry was fully involved

13  in, and fully informed about, the management of administration of the affairs of the Company,

14  including the administration of the Company's stock options and incentive plans …"  ¶¶ 27, 62.

15  However, in most circumstances the Ninth Circuit rejects a presumption about an officer's

16  knowledge solely on the basis of his or her position because it would defeat the Reform Act's

17  mandate to plead scienter with particularity.  *See, e.g., Silicon Graphics*, 183 F.3d at 985; *South*

18  *Ferry*, 2008 WL 4138237 at *5 ("when a complaint relies on allegations that management had an

19  important role in the company but does not contain additional detailed allegations about the

20  defendants' actual exposure to information, it will usually fall short of the PLSRA standard").

21          Neither does Ms. Berry's position as a member of the Stock Option Committee establish a

22  strong inference that she knew or recklessly disregarded that Juniper's financial disclosures were

23  materially false.  Even taking as true plaintiffs' allegation that Ms. Berry was "fully informed"

24  about the administration of Juniper's stock option plan (¶ 27) or that she "was placed in charge of

25  overseeing Juniper's stock option process" (¶ 81), Plaintiffs must support a theory of deliberate

26  recklessness based on oversight with specific allegations showing that Ms. Berry was "given

27  information that should have alerted [her] to the fact that the company's financials were false."  *In*

28  *re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 497 (S.D.N.Y. 2004).

Putting aside Plaintiffs' notion that APB 25 is "simple" to apply – a position hard justify in the face of widespread recognition to the contrary[10] – asking the court to infer that because a defendant is allegedly "actively engaged in" stock option administration she is therefore "well aware" of the accounting implications and intentionally engaged in fraud is unwarranted.

Finally, Plaintiffs do not adequately plead that Ms. Berry engaged in any unusual or suspicious stock trades during the class period from which one might infer deliberate misconduct. According to Plaintiffs, Ms. Berry, Mr. Kriens and Mr. Gani were "highly motivated to deceive investors because they reaped millions of dollars in instant gains from the backdating of their stock options grants." ¶ 230. However, although Plaintiffs allege that Ms. Berry received backdated stock option grants and that she exercised "certain" of those purportedly backdated options (¶ 25), they do not allege (as they do with the other defendants) which or how many of those options she exercised, or how much money she received based on her exercise of those options. Nor do Plaintiffs allege that Ms. Berry knew or understood that stock options she received had been backdated and not been properly accounted for. *See In re Juniper Sec. Litig*., 542 F. Supp. 2d at 1047-48 (relying on the size of the grants to Kriens, Gani and Sindhu to support an inference of knowledge).

### E.    Plaintiffs Fail To State a Claim For Control Person Liability Under Section 20(A)

Plaintiffs also assert a claim for control person liability under Section 20(a) against Ms. Berry.  Because the Complaint does not adequately allege a primary violation under Section 10(b) for the reasons set forth above, the claim for section 20(a) control person liability must be dismissed. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n. 15 (9th Cir. 2002) (to prevail on a claim for violation of § 20(a), Plaintiffs must first allege a violation of § 10(b) or Rule 10b-5);

---

[10] *See, e.g. Weiss*, 527 F.Supp.2d at 949 ("the misapplication of accounting rules to a particular company's stock option grants cannot be construed as a glaring example of scienter because the measurement date criteria embodied in APB No. 25 are far from obvious") (quoting *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1168 (S.D. Fla. 2004)); *In re Zoran*, 511 F. Supp. 2d at 1003 ("[t]he Office of the Chief Accountant of the Securities and Exchange Commission has stated that the accounting treatment of stock options admits the possibility of innocent error.").

1    *Howard*, 228 F.3d at 1065.  The control person claim against Ms. Berry should be dismissed for

2    the independent reason that Plaintiffs allege nothing about Ms. Berry's supposed control of Juniper

3    or any other individual defendant.

4    **V.    CONCLUSION**

5         Plaintiffs have not satisfactorily plead Ms. Berry's substantial or intricate involvement in

6    making any material misstatement in Juniper's public filings.  Nor can they demonstrate that they

7    are entitled to proceed under a scheme liability theory.  Accordingly, the claims against Ms. Berry

8    should be dismissed with prejudice.  Additionally, because Plaintiffs' claims are barred by the

9    statute of repose, any claims based on alleged conduct occurring more than five years before the

10   filing of the Complaint should be barred.

11

12   Dated: September 29, 2008            MELINDA HAAG
                                          JAMES A. MEYERS
13                                        JAMES N. KRAMER
                                          NANCY E. HARRIS
14                                        Orrick, Herrington & Sutcliffe LLP

15                                        _____
                                                    /s/ Melinda Haag
16                                               MELINDA HAAG
                                              Attorneys for Defendant
17                                                 Lisa C. Berry

18

19

20

21

22

23

24

25

26

27

28